STATE OF WEST VIRGINIA *v.* OSCAR O. WHEELER

(No. 9159)

Submitted April 15, 1941. Decided May 6, 1941

*Lee, Blessing & Steed* and *Howard B. Lee,* for plaintiff in error.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for defendant in error.

KENNA, PRESIDENT:

Oscar O. Wheeler, on August 6, 1940, was convicted in the Criminal Court of Raleigh County of having violated the provisions of Code, 3-7-1, and of having been previously convicted and sentenced for a felony. The sentence of the court was that he be confined in the penitentiary for a term of not less than one nor more than ten years, at the expiration of which, his confinement continue for an additional term of five years, due to the previous con-

viction. The Circuit Court of Raleigh County declined his petition for a review, which was later granted by this Court.

The indictment charges the accused with having circulated a certificate for the purpose of bringing about the nomination of candidates of the Communist Party under Code, 3-4-29, including himself as a gubernatorial candidate, and of having obtained the signature of one Alex Davis by knowingly misrepresenting that the paper in question was in fact a petition "to have a colored man on the ticket as a candidate for Vice-President and to make working conditions better, but in no wise did he represent that the same was in fact a certificate of nomination by the Communist party of the United States, by means of which fraudulent and false pretense, the said Oscar Wheeler did unlawfully and feloniously, falsely secure the signature of the said Alex Davis to said certificate of nomination, against the peace and dignity of the State." The indictment was demurred to as charging no offense.

It will be observed that one of the charges accuses the defendant with having failed to represent that the petition was in fact a certificate of nominations by the Communist Party of the United States. The indictment fails to allege that the certificate was in fact what the defendant failed to represent it as being. No case is cited in the state's brief holding it to be a criminal fraud or false pretense to fail to disclose as a matter of fact, a matter not set up as being an actual fact.

Another deception that Wheeler is accused of committing is the representation that the certificate was intended to make working conditions better. This plainly relates to the future, and since the anticipation of future happenings is merely a matter of opinion, would not be a false statement of fact. It is unnecessary, we believe, to cite authority on that question.

The remaining false representation is alleged to be the statement of the accused that the petition or certificate was for the purpose of nominating a colored man as a candidate for Vice President. Treating this misrepre-

sentation as sufficiently alleged, although the indictment nowhere alleges that the certificate of which Wheeler was procuring signers was not for the purpose of nominating a colored man for Vice President, the proof of the state, which includes the certificate in question, establishes without question that part of its object was to place upon the Communist ticket as a candidate for Vice President the name of James W. Ford, a colored man from the State of Alabama.

Treating the averment of representations not made by Wheeler and the averment that he falsely represented the happening of future events as charging no offense under Code, 3-7-1, eliminates from the charging part of the indictment all but the representation that the certificate was for the purpose of placing a colored man on the ticket as a nominee for Vice President, and that representation, according to the state's proof, is shown to be based upon a matter of fact. Therefore, the conclusion is inescapable that the only offense covered by the indictment, upon which the jury's verdict was based, is not sustained by the testimony adduced.

The state introduced seventeen witnesses whose signatures to the certificate had been obtained by the defendant, who were all permitted to testify to representations made to them by the defendant in order to deceive them into affixing their signature. Clearly, such testimony was inadmissible as tending to prove the doing of the acts charged. Conceding that it would be relevant and admissible as bearing upon the criminal intent of the accused, nevertheless, on that basis it presupposes enough evidence of the act itself to go to the jury. Otherwise, there is no act the intention of which is to be determined. Having reached the conclusion that there is no such proof in this record, it necessarily follows that the state erroneously tendered and the court erroneously admitted the testimony of these witnesses.

In addition to the foregoing, it may be said that the state's witness, Alex Davis, was an illiterate colored man, who stated distinctly both on direct and cross-examination that before he signed the petition, he had heard the

accused say nothing about it nor had he conversed with the accused about its contents, signing simply because Roy Stovall, his landlord, had signed. True, he also testified that before signing, Wheeler had told him that the purpose of the petition was to make working conditions better, and to help a colored man running for Vice President.

The accused complains bitterly of the manner in which his trial was conducted, referring to a number of flippant and caustic comments by the prosecuting attorney and his assistant, many of them having been permitted, over specific objection, to remain in the record. We regard it as unnecessary in the light of our conclusion to reverse the judgment on other grounds, to discuss these charges of abusive treatment during the trial, beyond noting the prejudice that undoubtedly resulted from the charge of former conviction. Based upon this charge, the state was permitted to introduce proof of Wheeler's conviction in a court martial proceeding during the former World War of refusing to carry out an order to carry coal, and sentence to imprisonment for fifteen years in the Disciplinary Barracks at Fort Leavenworth. We are not confronted here with the question of whether our statute contemplates only a previous conviction of a felony under the law of the State of West Virginia, or is all-embracing of felonies under any law, the question here being merely whether a judgment and sentence under the Military Code in time of war is included. We think by the overwhelming weight of authority it is not. Davis, A Treatise on the Military Law of the United States, 521. See also *Kurtz* v. *Moffitt*, 115 U. S. 487, 6 S. Ct. 148, 29 L. Ed. 458; *Poole* v. *Nuchols*, 18 N. D. 233, 119 N. W. 632, 20 L. R. A. (N. S.) 413, and note; *Pool* v. *Peake*, 22 N. D. 457, 135 N. W. 197, 40 L. R. A. (N. S.) 354. The basis of criminal punishment is to prevent the repetition of acts, the frequent performance of which would be injurious to the common good. The perpetrators thereof are made public examples in order to discourage others from conducting themselves in like manner. On the other hand, the Military Code is disciplinary and is intended to operate pri-

marily upon the individual. It is administered by the military, not by the civil, authorities. Its penalties are varied, according to the circumstances, and the discretion of the presiding officers, though subject to review as a matter of course, is quite elastic. The offenses are not divided into a classification as felonies and misdemeanors, and there are many other respects in which the plain difference between criminal law and military law could be illustrated. A felony is a term applicable to the criminal law, and it has little, if any, relation to the military code.

Having concluded that the state's evidence does not sustain the verdict, the judgments of the Circuit and Criminal Courts of Raleigh County are reversed, the verdict set aside, and the case remanded.

*Judgments reversed; verdict set aside; case remanded.*