Arland Birl MILLWOOD, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-83-690.

Court of Criminal Appeals of Oklahoma.

July 2, 1986.

Elaine Meek, Asst. Appellant Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., and Hugh A. Manning, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

Arland Birl Millwood, the appellant herein, was convicted in the District Court of Canadian County, Case Nos. CRF–82–309 and CRF–82–310, for the offense of Rape in the First Degree, After Former Conviction of a Felony, and Forcible Sodomy, After Former Conviction of a Felony. He was sentenced to life imprisonment and twenty (20) years imprisonment respectively for each count.

The facts in this case reveal that in the late evening hours of August 1, 1982, L.G.L., a fifteen-year-old girl, was walking home from a friend's house in the Westbury Addition near Yukon, Oklahoma. She was accosted by the appellant, who dragged her to a path near the dirt road on which she was walking, and threatened to kill her if she did not cooperate. L.G.L. was forced to commit an act of oral copulation, was raped, and was again sodomized. She also was struck several times before she was finally released. L.G.L. ran to a nearby house, and Oklahoma City police were called.

### I.

Because the appellant's first, second and sixth assignments of error are related, we deem it necessary to combine our discussion of these propositions. In the first of these assignments of error, the appellant raises a question of first impression in this jurisdiction, to-wit: whether a conviction obtained pursuant to a military general Courts-Martial proceeding may be used for enhancement of punishment under 21 O.S. 1981, § 54. This section states that

[e]very person who has been convicted in any other ... government ... of an offense which, if committed within this state, would be punishable by the laws of this state by imprisonment in the penitentiary, is punishable for any subsequent crime committed within this state, in the manner prescribed ..., and to the same extent as if such first conviction had taken place in a court of this state.

### A.

■ In 1935, this Court determined that the word "government" in section 54 "includ[es] the general government of the United States," and, accordingly, convictions rendered in the federal courts may be used as enhancement of punishment for subsequent offenses committed in Oklahoma. *Newton v. State*, 56 Okl.Cr. 391, 397–398, 40 P.2d 688, 690–691 (1935). The military is part of our federal government, and is specifically subject to the laws of Congress, and to the decisions of the President in his role as Commander-in-Chief of the Armed Services. *See U.S. Const.*, art. I, § 8, and art. II, § 2. We have little difficulty extending our holding in *Newton v. State*, to convictions arising from general court-martial proceedings of the United States government.

Appellant's chief argument against such a holding is that the general court-martial is not a court proceeding designed to give the accused the full panoply of rights guaranteed an accused under the Federal Constitution; accordingly, a conviction rendered by a general court-martial tribunal

should not be used for enhancement of punishment for a subsequent state criminal offense, according to appellant's theory. We disagree. *First,* the Legislature clearly contemplated that convictions used for enhancement of punishment might be obtained from courts employing a variety of procedural schemes, including other "nations" in which the Federal Constitution is obviously without authority of law. *Secondly,* we do not agree that the deviations between general court-martial proceedings and civilian criminal trials are so great as to render military convictions invalid for use as enhancement of punishment. In 1968, the Congress substantially revised the Uniform Code of Military Justice, 10 U.S.C. § 801 *et seq.* (hereinafter UCMJ). According to Bryne, "[w]ith these changes, military law appeared to be losing its identity as a separate body of law" and, "[i]ndeed, the distinctions between a U.S. federal court and a special or general court-martial have been greatly lessened." E. Bryne, *Military Law* 9 (3d ed. 1981). Furthermore, Bryne relates that "[t]he provisions of the U.S. Constitution apply to the military justice system unless expressly or impliedly excluded by the Constitution." *Id.* at 10. The UCMJ codifies many of the federal constitutional rights available to defendants in civilian criminal trials, including the right to a speedy trial, the right of the accused to be informed of the nature and cause of the accusation, the right of the accused to be confronted with the witnesses against him, the right of the accused to compulsory process for obtaining witnesses in his favor, the right of the accused to have assistance of counsel for his defense, and protections against double jeopardy and self-incrimination. *See* 10 U.S.C., §§ 810, 833, 835, 839, 846, 827, 844, 831. The Code also provides that no serviceman may be detained or arrested except for probable cause. *See* 10 U.S.C.

§ 809(d). Finally, at trial, a serviceman accused is clothed with the presumption of innocence, and cannot be convicted except on evidence adduced by the government proving his guilt beyond a reasonable doubt. 10 U.S.C. § 851(c). It also is noteworthy that if the UCMJ fails to provide sufficient guidance on a procedural point, the Federal Rules of Criminal Procedure are to be applied. *Chenoweth v. Van Arsdall,* 22 U.S.C.M.A. 183, 46 C.M.R. 183 (1973). General court-martial proceedings appear to be substantially similar to most, if not all, civilian criminal trials in federal courts and the various state courts. *Third,* we note that the majority of those Courts considering this issue have held that convictions obtained from military general court-martial proceedings may be used to enhance punishment for subsequent offenses. *See United States ex rel. Thompson v. Price,* 258 F.2d 918 (3d Cir.1958); *Scott v. United States,* 392 A.2d 4 (D.C. 1978); *People v. Calderon,* 205 Cal.App.2d 566, 23 Cal.Rptr. 62 (1962); *Commonwealth v. Thompson,* 389 Pa. 382, 133 A.2d 207 (1957); *People ex rel. Stewart v. Wilson,* 257 App.Div. 555, 13 N.Y.S.2d 749 (1939). *Contra State v. Paxton,* 201 Kan. 353, 440 P.2d 650 (1968), *cert. den.* 393 U.S. 849, 89 S.Ct. 137, 21 L.Ed.2d 120 (1968); *State v. Wheeler,* 123 W.Va. 279, 14 S.E.2d 677 (1941).[1]

▮ In this case, appellant was convicted in a general court-martial for the offenses of rape and sodomy, which occurred in one criminal transaction. Rape and Sodomy are defined in the UCMJ by language remarkably similar to the counter part Oklahoma statutes. *Compare* 10 U.S.C. § 920 with 21 O.S.1981, § 1111, 1114 (rape), *and* 10 U.S.C. § 925 with 21 O.S.1981, § 886, as construed by *Roberts v. State,* 57 Okl.Cr. 244, 47 P.2d 607 (1935) (sodomy). The prior offenses for which appellant was convicted

---

1. Both the *Paxton* and *Wheeler* decisions were based on the fact that neither the Kansas or West Virginia statutes required that the prior convictions be a felony. Consequently, if prior military convictions were used, offenses which would be no crime at all under Kansas or West Virginia law could be used to enhance punishment. These two States refused to allow such an unjust result to occur, and, accordingly, barred the use of prior military convictions as basis for enhancement of punishment.

are punishable in Oklahoma by imprisonment in the state penitentiary. 21 O.S. 1981, § 886, 1115. Accordingly, the State was entitled to enhance punishment for the instant offense through the use of the appellant's prior military convictions. This assignment of error is without merit.

### B.

■ Appellant next argues that, notwithstanding that general court-martial convictions may be used to enhance punishment, the method of proof employed by the State was prejudicial, and should not have been allowed. At second stage of trial, the State introduced State's Exhibit No. 3, an Order of Court-Martial for this appellant. Appellant argues that this document contained prejudicial information the jury should not have been permitted to see. However, our close examination of the exhibit reveals the document contained only the offenses [2] committed by this appellant, the dates on which the offenses were committed, and the name of the victim.[3] While the better practice would have been to excise this information, we cannot see how the appellant was prejudiced. This assignment of error is without merit.

■ Finally, we hold that the court-martial order was properly certified by the United States Army, and thus was admissible at trial. See 12 O.S.1981, § 2901.

This assignment of error is without merit.

### II.

Appellant next complains he was denied his right to an instruction on his theory of defense when the trial court failed to include an instruction on alibi in its charge to the jury. We disagree.

The record in this case reflects the testimony of the appellant, his sister, and his brother-in-law that at the time of the rape he was on his way home from his sister's apartment, where he had watched a Tarzan movie on television. Appellant's brother-in-law testified that it took some fifteen minutes to travel from his apartment to the location of the rape. Evidence also was adduced that the movie ended at approximately 9:50 p.m., and that L.G.L. testified she was assaulted at approximately 10:00 p.m. Defense counsel did not request an alibi instruction, nor did he object to the trial court's failure to include an alibi charge in the jury instructions.

■ We have repeatedly held that "[i]f counsel for [the] defendant [is] of the opinion that additional instructions should be given to the jury, it is [his] duty to reduce them to writing, submit them to the trial judge, and request that they be given. If [he] fail[s] to do this, a conviction will not be reversed unless [the Court of Criminal Appeals] is of the opinion in the light of the entire record, including instructions which were given, that by the failure of the trial court to instruct the jury upon some material question of law, the defendant has been deprived of a substantial right."

*Wolf v. State,* 375 P.2d 283, 287 (Okl.Cr. 1962), quoting *Sheehan v. State,* 83 Okl.Cr. 41, 172 P.2d 809 (1946). We have previously applied this rule specifically to the failure of the trial court to give, *sua sponte,* an alibi instruction. *See York v. State,* 40 Okl.Cr. 312, 269 P. 323 (1928). In this case, the appellant was given the opportunity to present any evidence in his possession regarding this alibi defense. He was in no way restricted in his argument to the jury regarding this defense. Furthermore, all of the first stage instructions were accurate. We are hard-pressed to find prejudice in the trial court's failure to include an alibi instruction, in the absence of a re-

---

2. The appellant was convicted by the general court-martial tribunal of several courts of rape and sodomy. However, because these all occurred in one transaction, the trial judge properly instructed the jury that it could only consider prior acts as constituting one prior conviction for enhancement purposes.

3. Other obviously prejudicial information was excised by the trial judge before the exhibit was permitted to go to the jury.

quest by defense counsel that he do so. *See* 20 O.S.1981, § 3001.1. This assignment of error is without merit.

### III.

Appellant next argues the in-court identification made by L.G.L. was tainted by pre-trial irregularities occurring at a photographic line-up conducted by Oklahoma City Police. This claim is without merit.

■ The United States Supreme Court has said that "convictions based on eyewitness identification ... by photograph will be set aside ... if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. State*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). However, the Court has held that even an improper pre-trial identification will not invalidate a courtroom identification that can be established as independently reliable. *Green v. State*, 594 P.2d 767 (Okl.Cr.1979). *Accord Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In this case, the appellant has failed to show even that the photographic line-up procedure was improperly suggestive. We have held that a line-up, whether live or by photograph, is proper if participants are of the same general weight, height, age color and nationality as the accused. *Scott v. State*, 668 P.2d 339

(Okl.Cr.1983). The photographs here contained a photograph of the appellant and eight other individual photographs of men with brown hair, mustaches, and the same general build as the accused. The photographic line-up was not impermissibly suggestive, and this assignment of error is therefore without merit.

### IV.

■ Finally, the appellant claims that the prosecutor's comments deprived him of a fair and impartial trial. We do not agree. First, we reject the appellant's assertion that the prosecutor's statements in the first stage of trial constituted an attempt to define the term reasonable doubt. Furthermore, although the prosecutor should not mention the victim in the appellant's first conviction, *see Thompson v. State*, 462 P.2d 299 (Okl.Cr.1969), we do not believe these comments were so inflammatory as to require modification.

Accordingly, for the foregoing reasons, the judgment and sentence of the trial court is AFFIRMED.

BRETT and BUSSEY, JJ., concur.