[No. 14284-1-III.   Division Three.   July 23, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT ALLEN ARONSON, *Appellant*.

---

*Paul J. Wasson*, for appellant.

*James R. Sweetser, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

THOMPSON, J. — Robert Allen Aronson appeals his sentence after a guilty plea to two counts of first-degree child rape, RCW 9A.44.073(1). He contends the court erroneously included in his criminal history a 1960 conviction for indecent liberties resulting from a military court martial. We affirm.

Mr. Aronson pleaded guilty pursuant to a plea agreement, based on an understanding his criminal history consisted of a 1969 indecent liberties conviction. The standard sentencing range would have been 146 to 194 months. Before sentencing, the State requested additional time to investigate Mr. Aronson's reference to a prior military conviction. The investigation revealed Mr. Aronson pleaded guilty of indecent liberties before a general court martial in 1960, while he was serving in the United States Army in Germany.

The State asked the court to include the military convic-

tion in Mr. Aronson's criminal history,[1] which would increase his offender score from six to nine, resulting in a standard sentencing range of 210 to 280 months. The court agreed, but gave Mr. Aronson the opportunity to withdraw his guilty plea. Mr. Aronson declined, and the court accepted the State's recommended sentence of 210 months.

■ A defendant's offender score is determined in part by his "criminal history," which is "the list of a defendant's prior convictions, whether in this state, in federal court, or elsewhere." RCW 9.94A.030(12)(a). A defendant who contests the constitutional validity of a prior conviction generally may not do so as part of the sentencing proceedings on the current conviction. *State v. Ammons*, 105 Wn.2d 175, 188, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986). However, criminal history may not include a conviction that is "constitutionally invalid on its face . . . ." *Id.* at 187. "Constitutionally invalid on its face means a conviction which without further elaboration evidences infirmities of a constitutional magnitude." *Id.* at 188.

Mr. Aronson contends his 1960 military conviction is constitutionally invalid on its face. He does not argue directly that he was denied constitutional protections, but instead contends generally that in 1960 the Uniform Code of Military Justice failed to provide various constitutional protections.

Washington appellate courts have not directly addressed this issue, although in *State v. Duke*, 77 Wn. App. 532, 892 P.2d 120 (1995), this court impliedly concluded military offenses generally may be included in criminal history. *Id.* at 534 n.2. Sentencing guidelines in Minnesota, which has a similar statutory scheme, expressly authorize use of prior military offenses in calculating criminal history. MINN. STAT. ANN. ch. 244 app., MINNESOTA SENTENCING GUIDELINES & COMMENTARY § II.B.501 (West 1995); *Hill v.*

---

[1]Prior felony convictions for sex offenses are included in computing the offender score, regardless of the length of time between the prior and current convictions. *See* RCW 9.94A.360(2).

*State*, 483 N.W.2d 57 (Minn. 1992). Under the federal sentencing guidelines, military convictions by general or special courts martial are included in criminal history. UNITED STATES SENTENCING GUIDELINES § 4A1.2(g); *see United States v. Locke*, 918 F.2d 841, 842 (9th Cir. 1990).[2]

In the analogous situation of determining repeat or habitual offender status, the state courts that have addressed the question appear to be split. *See* Christopher Vaeth, Annotation, *Use of Prior Military Conviction to Establish Repeat Offender Status*, 11 A.L.R.5TH §§ 3-4, at 233-39 (1993). However, courts that decline to consider prior military offenses do not question the *validity* of military convictions, *see State v. Mitchell*, 659 S.W.2d 4, 5 (Mo. Ct. App. 1983), but merely point out that military offenses frequently have no civilian counterparts, *see State v. Paxton*, 201 Kan. 353, 201 Kan. 607, 440 P.2d 650, 659-60, *cert. denied*, 393 U.S. 849 (1968), or that the purposes of military justice differ from those of civilian criminal law, *see State v. Wheeler*, 123 W. Va. 279, 14 S.E.2d 677, 679 (1941). Courts of many other states permit use of military convictions, particularly when the defendant's act would have been unlawful under the forum-state's law. *See Esters v. State*, 480 So. 2d 615, 617-18 (Ala. Crim. App. 1985); *People v. Calderon*, 205 Cal. App. 2d 566, 23 Cal. Rptr. 62, 66 (1962); *State v. Bullock*, 329 So. 2d 733, 737 (La. 1976); *Muir v. State*, 308 Md. 208, 517 A.2d 1105, 1109-10 (1986); *People v. Williams*, 78 A.D.2d 643, 432 N.Y.S.2d 121, 122-23 (1980); *Millwood v. State*, 721 P.2d 1322, 1324 (Okla. Crim. App. 1986); *Commonwealth v. Smith*, 528 Pa. 380, 598 A.2d 268, 273-74, 11 A.L.R.5th 989 (1991); *Johnson v. State*, 432 S.W.2d 98, 100 (Tex. Crim. App. 1968).

Evaluating the constitutional validity of the military criminal justice system is difficult, in part because of the limited nature of federal courts' review. *See Calley v. Cal-*

---

[2]In *Locke*, 918 F.2d at 842, the defendant similarly argued the court's use of a prior military conviction was "fundamentally unfair." The court held that "since appellant's original military conviction was consistent with due process, the district court's reliance on that conviction for computing his criminal history created no constitutional violation." *Id.* at 842 (citation omitted).

*laway*, 519 F.2d 184, 199-203 (5th Cir. 1975), *cert. denied sub nom. Calley v. Hoffman*, 425 U.S. 911 (1976); John E. Theuman, Annotation, *Review by Federal Civil Courts of Court-Martial Convictions-Modern Status*, 95 A.L.R. Fᴇᴅ 472 (1989). Moreover, the Constitution recognizes that "the exigencies of military discipline require the existence of a special system of military courts in which not all of the specific procedural protections deemed essential in Art. III trials need apply." *O'Callahan v. Parker*, 395 U.S. 258, 261, 89 S. Ct. 1683, 23 L. Ed. 2d 291 (1969), *overruled on other grounds by Solorio v. United States*, 483 U.S. 435, 107 S. Ct. 2924, 97 L. Ed. 2d 364 (1987).[3]

█ Regardless of the merits of Mr. Aronson's argument, however, the precise question here is whether his prior military conviction is "constitutionally invalid on its face." He argues the Uniform Code of Military Justice in 1960 did not provide for a trial by jury, unanimous verdict, compulsory process, charges by information or indictment, or appellate review. On its face, however, the 1960 document does not establish Mr. Aronson was denied any of these protections. His guilty plea made many of these requirements inapplicable. The document expressly includes "specifications" (in the nature of an information), of which the military authorities were required to inform him "as soon as practicable." 10 U.S.C. § 830(a), (b). The document indicates the conviction was reviewed by a three-member Board of Review. Without further elaboration, which Mr. Aronson has not provided, the document does not demonstrate the military conviction was invalid.

---

[3]In this case, any such analysis is further complicated by the fact the conviction is more than 30 years old. Nevertheless, in enacting the Uniform Code of Military Justice in 1950, "Congress extended to the military by statutory provision many of the explicit guarantees of the Bill of Rights." *Calley*, 519 F.2d at 202 n.28. For a general discussion during that period of the applicability of the Bill of Rights to military courts martial, *see* Gordon D. Henderson, *Courts-Martial and the Constitution: The Original Understanding*, 71 Hᴀʀᴠ. L. Rᴇᴠ. 293 (1957); Frederick Bernays Wiener, *Courts-Martial and the Bill of Rights: The Original Practice I*, 72 Hᴀʀᴠ. L. Rᴇᴠ. 1 (1958); Frederick Bernays Wiener, *Courts-Martial and the Bill of Rights: The Original Practice II*, 72 Hᴀʀᴠ. L. Rᴇᴠ. 266 (1958).

The court did not err in including the offense in Mr. Aronson's criminal history.

We affirm the sentence.

SWEENEY, C.J., and SCHULTHEIS, J., concur.