# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57076-9-II |
| Respondent, | |
| v. | |
| MATTHEW ADAM LEWIS, | PUBLISHED OPINION |
| Appellant. | |

CRUSER, A.C.J. — Matthew Lewis was sentenced to 102 months of confinement after pleading guilty to two counts of dealing in depictions of a minor engaged in sexually explicit conduct and one count of possession of depictions of a minor engaged in sexually explicit conduct. His offender score was 9-plus, accounting for three prior sex offense convictions that Lewis pleaded guilty to in Australian court in 2017.

Lewis now appeals his sentence, arguing that the trial court erred when it included his Australian convictions in his offender score calculation. He argues that the plain language of the offender score statute unambiguously excludes prior convictions from outside the United States. He argues in the alternative that if the statute is ambiguous, the rule of lenity requires us to exclude foreign country convictions. Finally, he argues that even if foreign country convictions may generally be included in one's offender score, his Australian convictions should be excluded from his score as facially invalid.

We hold that the term "out-of-state" as used in the offender score statute is unambiguous and does not exclude foreign country convictions. We further hold that Lewis' Australian convictions are not facially invalid. We therefore affirm Lewis' sentence.

FACTS

Lewis pleaded guilty in Australian court to three offenses related to child sexual abuse material that he committed in 2017. His conduct included sending explicit messages and child sexual abuse material to a 14-year-old girl when Lewis was 28. The girl reported his behavior to the police, who seized and searched Lewis' phone and found more images. Lewis was arrested and pleaded guilty to "aggravated dissemination of child exploitation material;" "communicating with the intention of making a child amenable to sexual activity;" and "aggravated possession of child exploitation material." Clerk's Papers (CP) at 193.

Lewis served 18 months in an Australian prison for his crimes. The Australian court explained in its sentencing remarks (equivalent to our judgment and sentence) that:

> Jane [pseudonym] immediately reported the matter to the Victor Harbor police. That afternoon police located you and seized a mobile phone that you were holding. You were arrested and taken to the Victor Harbor Police Station where you were interviewed.

*Id.* at 194.

Upon Lewis' release from prison in 2018, he was deported to the United States and moved in with his mother in Aberdeen. Lewis registered as a sex offender in Grays Harbor County, listing his Australian offenses on his registration form.

Lewis later faced charges in Grays Harbor County arising from social media records showing that Lewis sent explicit messages and images to underage users, including child sexual abuse material, in 2019. He was charged with two counts of dealing in depictions of a minor

engaged in sexually explicit conduct, one count of possession of depictions of a minor engaged in sexually explicit conduct, and one count of communication with a minor for immoral purposes.

In plea negotiations, Lewis and the State reached an agreement as to all but the appropriate offender score. The parties disagreed about whether Lewis' Australian charges should be counted in his offender score. Whereas Lewis thought his score should be 6, the State believed that Lewis' score should be 9-plus. Lewis sought to plead guilty and to reserve the offender score issue for the time of sentencing, but the court expressed reservations about whether Lewis could knowingly and voluntarily enter a guilty plea without knowing what his offender score and corresponding sentencing range could be.

The court would not accept the plea and asked the parties to brief the offender score issue. The State provided the court with a copy of Lewis' Australian sentencing remarks and certificate of record. The trial court considered these documents and heard argument on the issue at two hearings.

The trial court concluded that Lewis' Australian convictions should be counted in his offender score as sex offense convictions. It found that the offenses were factually comparable to Washington felonies and that the Australian sentencing remarks provided by the State were equivalent to our judgment and sentence. It also concluded that the language "out-of-state" did not exclude foreign offenses. The trial court entered findings of fact and conclusions of law to that effect.

Lewis then pleaded guilty to two counts of dealing in depictions of a minor engaged in sexually explicit conduct and one count of possession of depictions of a minor engaged in sexually

explicit conduct. His plea agreement provided that his offender score was 9-plus, assigning three points to each of his three Australian convictions.[1]

Based on the offender score of 9-plus, Lewis faced a standard range of 87-116 months for counts one and two and a standard range of 77-102 months for count three. The State recommended a low-end sentence of 87 months. The Department of Corrections recommended a sentence of 102 months, taking into account his Australian crimes and his lack of remorse. The court sentenced Lewis to 102 months' confinement. Lewis now appeals his sentence.

## DISCUSSION

### I. MEANING OF "OUT-OF-STATE" WITHIN THE SRA

Lewis argues that the trial court erred when it included his Australian convictions in calculating his offender score. Specifically, he argues that the plain language of the relevant statutory provision excludes a defendant's prior foreign country convictions from the calculation of the defendant's offender score. We disagree.

### A. LEGAL PRINCIPLES

#### i. Statutory Interpretation

Statutory interpretation is a question of law that we review de novo. *State v. Valdiglesias LaValle*, 2 Wn.3d 310, 317, 535 P.3d 856 (2023). Our goal is to "ascertain and carry out the Legislature's intent." *Id.* at 317-18 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)).

---

[1] Lewis' plea agreement indicated that he agreed the criminal history listed on the plea agreement is accurate, but that he disputed the calculation of his offender score.

If the plain meaning of a statute is clear, our inquiry ends and we give effect to that meaning. *Id.* at 318. We determine the plain meaning of a statute by examining the text, the statutory context, related provisions, and the statutory scheme as a whole. *Id.* Undefined terms are given their ordinary meaning unless doing so would contradict the legislature's intent. *Id.*

Alternatively, if the statute can be reasonably interpreted in more than one way, the statute is ambiguous. *Id.* A term is not ambiguous simply because it can be interpreted in more than one *possible* way; rather, it must be subject to multiple *reasonable* interpretations. *Id.* We interpret an ambiguous term by employing principles of statutory construction, and examining legislative history and relevant case law. *Id.*

*ii. Sentencing Reform Act Generally*

Washington's Sentencing Reform Act of 1981 (SRA) is codified at chapter 9.94A RCW. *See* RCW 9.94A.020. Its purpose is "to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences." RCW 9.94A.010. It is also intended to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history." RCW 9.94A.010(1). "Criminal history" means "the list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere." RCW 9.94A.030(11).

The SRA directs courts to determine the standard sentence range for a felony by first calculating the defendant's offender score and determining the seriousness level of the current

offense. RCW 9.94A.525, .530.[2] The offender score and seriousness level are then used to locate the standard sentence in the tables (grids) codified at RCW 9.94A.510 and 9.94A.517. The court then applies any adjustments to the standard range that are located in RCW 9.94A.533.[3] The court has discretion to sentence offenders within the standard range. RCW 9.94A.530. If aggravating factors are present, the court may impose an exceptional sentence above the standard range. RCW 9.94A.537.

Offender scores are calculated by adding together points for the defendant's prior convictions according to RCW 9.94A.525. Each prior conviction is assigned a point value depending on the offense and its severity. RCW 9.94A.525(7)-(21).

*iii. Out-of-State Prior Convictions*

An out-of-state prior conviction counts toward one's offender score as if it were a conviction for the comparable Washington crime. RCW 9.94A.525(3). The comparability analysis requires "rough comparability" with a Washington crime rather than an exact match. *State v. Jordan*, 180 Wn.2d 456, 465, 325 P.3d 181 (2014). This is so because "the legislature purposefully created the SRA scheme broadly in order to 'ensure that defendants with equivalent prior convictions are treated the same way, regardless of whether their prior convictions were incurred in Washington or elsewhere.' " *Id.* (internal quotation marks omitted) (quoting *State v. Morley*, 134 Wn.2d 588, 602, 952 P.2d 167 (1998)).

---

[2] We cite to the current version of these statutes because recent statutory amendments do not impact our analysis. *See* LAWS OF 2023, ch. 415, § 2; LAWS OF 2021, ch. 215, § 100 (RCW 9.94A.525); LAWS OF 2023, ch. 102, § 15 (RCW 9.94A.530).

[3] We cite to the current version of this statute because recent statutory amendments do not impact our analysis. LAWS OF 2020, ch. 330, § 1.

The SRA does not define "out-of-state." *See* RCW 9.94A.030. In the SRA's offender score provision, the term "out-of-state" is used as follows:

> Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law. Federal convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law.

RCW 9.94A.525(3).

Interpreting a former version of this provision, Division One of this court held in *State v. Villegas*, 72 Wn. App. 34, 40, 863 P.2d 560 (1993), that "out-of-state convictions" includes "all non-Washington convictions, including federal convictions." At the time, the provision did not include any reference to federal convictions; it read, "Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." Former RCW 9.94A.360(3) (1992), *recodified as* RCW 9.94A.525 (LAWS OF 2001, ch. 10, § 6). The current statute now includes a reference to "federal convictions." *Compare* RCW 9.94A.525(3), *with* former RCW 9.94A.360(3).

In *Villegas*, the trial court applied the rule of lenity to omit a prior federal felony conviction from the defendant's offender score because there was no comparable Washington offense. 72 Wn. App. at 35. The State appealed, arguing that the conviction should have been included despite lacking a comparable Washington offense. *Id.* It argued that the provision requiring a comparable Washington offense referred only to "out-of-state convictions" whereas elsewhere in the SRA, federal and out-of-state convictions were referred to separately. *Id.* at 36-37. In the State's view, this indicated that the legislature intended to exclude federal crimes from the meaning of the statutory term "out-of-state." *Id.*

The *Villegas* court reached its result by first determining that the term was ambiguous because it could be interpreted in two ways: to mean only convictions from other states within the United States or to mean "all non-Washington convictions, including out-of-state, federal, and foreign convictions." *Id.* at 37. The court then reasoned that interpreting "out-of-state" to exclude federal convictions "would create disharmony" by excluding *all* federal convictions from the offender score calculation, including those with a Washington counterpart. *Id.* It concluded that this interpretation must be contrary to the legislature's intent because it would render meaningless the SRA's definition of "criminal history," which included all prior convictions "whether in this state, in federal court, or elsewhere." *Id.* at 38; *id.* at 38 n.2 (quoting former RCW 9.94A.030(12)(a) (1992)). It affirmed the trial court. *Id.* at 40.

After *Villegas*, the legislature amended the offender score provision to provide that "federal convictions" as well as "out-of-state convictions" must have a Washington analog to be included in the offender score calculation. *Compare* former RCW 9.94A.360(3) (1995), *with* former RCW 9.94A.360(3) (1992). *See also* LAWS OF 1995, ch. 316, § 1. The term has not been re-evaluated since then.

Without discussing this statutory change, the supreme court later relied on *Villegas* to hold that military courts-martial are included in the SRA's language referring to out-of-state convictions and convictions from elsewhere. *State v. Morley*, 134 Wn.2d 588, 600, 952 P.2d 167 (1998). Comparing the term "elsewhere" to the term "out-of-state," the court noted that each term was "equally broad in its scope." *Morley*, 134 Wn.2d at 600. However, because the case did not concern a conviction from a foreign country, the court stopped short of deciding whether such a conviction would be encompassed by those terms: " 'Elsewhere' reaches all foreign convictions, whether

from other state courts, federal courts, military courts, and *perhaps even courts in foreign countries*." *Id.* at 599 (emphasis added).

B. APPLICATION

On appeal, Lewis asks us to hold that the plain language of former RCW 9.94A.525(3) unambiguously excludes foreign convictions or, at the very least, that the statute is ambiguous. The State provides no argument as to whether the term is ambiguous.[4] We disagree with Lewis and hold that the plain language of RCW 9.94A.525(3) does not exclude foreign convictions from the calculation of one's offender score.

*i. Dictionary Definitions*

Our plain meaning inquiry begins by looking at the text itself. *Valdiglesias LaValle*, 2 Wn.3d at 318. If a term is undefined, we use the ordinary meaning of the term as defined in a standard dictionary. *Id.* We also employ the ordinary rules of grammar. *Id.*

Lewis argues that dictionary definitions support his theory that "out-of-state" refers plainly to other states within the United States. He points to two sources: Oxford Advanced American Dictionary and Dictionary.com. His first source, Oxford, defines the term as "coming from or

---

[4] The State, instead of arguing for its own interpretation of the statute, asserts that *State v. Payne*, 117 Wn. App. 99, 69 P.3d 889 (2003), "affirmatively held that such [foreign country] convictions can be considered." Br. of Resp't at 2. This is a misreading of *Payne*. It relies upon the following language: "Although the State concedes that the [Canadian] conviction cannot be counted under the two-strike statute, it correctly contends that the trial court can consider the conviction on remand under the three-strike statute or as an unscored offense that would support an exceptional sentence." *Payne*, 117 Wn. App. at 105. Nowhere in *Payne*, however, did either party argue that foreign, out-of-United States convictions should be excluded from the offender score statute. That issue was not before the court. Accordingly, we are not convinced by the State's argument that settled law resolves the issue of whether trial courts can properly consider foreign offenses when calculating an offender score.

happening in a different state."[5] However, the same source defines "state" primarily as "a country considered as an organized political community controlled by one government."[6] Reading these two definitions together suggests that Oxford's definition of "out-of-state" includes foreign countries. Accordingly, Oxford's definition of "out-of-state" does not support Lewis' plain language argument.

Lewis' second source, Dictionary.com, defines the term "out-of-state" to mean "of, relating to, or from another state of the U.S."[7] Thus, he has identified a single source, Dictionary.com, that would support his interpretation.

But we are not confined to the sources identified by Lewis. Also instructive is the definition of "out of" found in *Merriam-Webster*.[8] *Merriam-Webster* explains that the prepositional phrase "out of" is "used as a function word to indicate a position or situation beyond the range, limits, or sphere of."[9] The definition of "out of" found in *Merriam-Webster* suggests that "out-of-state

---

[5] OXFORD ADVANCED AMERICAN DICTIONARY, https://www.oxfordlearnersdictionaries.com/us/definition/american_english/out-of-state (last visited Jan. 18, 2024).

[6] OXFORD ADVANCED AMERICAN DICTIONARY, https://www.oxfordlearnersdictionaries.com/us/definition/english/state (last visited Jan. 18, 2024).

[7] Dictionary.com, https://www.dictionary.com/browse/out%20of%20state (last visited Jan. 18, 2024).

[8] *Merriam-Webster* does not define the term "out-of-state."

[9] MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/out%20of (last visited Jan. 18, 2024).
*Merriam-Webster* contains other phrases beginning with "out-of" followed by a noun: "out-of-bounds," for example, means "outside the prescribed or conventional boundaries or limits." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/out-of-bounds (last visited Jan. 18, 2024). Similarly, *Black's Law Dictionary* at 1329 defines "out-of-court" to mean "[n]ot done or made as part of a judicial proceeding." BLACK'S LAW DICTIONARY (11th ed. 2019).

conviction" plainly means a conviction originating from "beyond the range, limits, or sphere of" the state of Washington. This meaning does not exclude foreign country convictions.

Moreover, *Merriam-Webster* defines "state" alternatively as "a politically organized body of people usually occupying a definite territory," "the operations or concerns of the government of a country," or "one of the constituent units of a nation having a federal government."[10] Similarly, *Black's Law Dictionary* at 1697 defines "state" first as "[t]he political system of a body of people who are politically organized; the system of rules by which jurisdiction and authority are exercised over such a body of people," and second as "[a]n institution of self-government within a larger political entity; esp., one of the constituent parts of a country having a federal government."[11]

Together, these definitions suggest that "out-of-state conviction" refers to a conviction from anywhere outside of the target state, in this case Washington. The dictionary definitions do not show that the ordinary meaning of "out-of-state conviction" as used in the offender score statute refers *exclusively* to convictions from states within the United States but outside of Washington. It refers to non-Washington convictions more generally, including both convictions from foreign nations and the from the constituent units (states) of a larger federal entity such as the states within the United States. Thus, Lewis' view is unpersuasive.

*ii. Context and Related Provisions*

Our plain meaning inquiry next requires that we examine the term "in the context of the whole statute, 'not in isolation or subject to all possible meanings found in a dictionary.' "

---

[10] MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/state (last visited Jan. 18, 2024).

[11] BLACK'S LAW DICTIONARY (11th ed. 2019).

*Valdiglesias LaValle*, 2 Wn.3d at 319 (quoting *State v. Lilyblad*, 163 Wn.2d 1, 9, 177 P.3d 686 (2008)). We examine the text, its context, related statutory provisions, and the statutory scheme as a whole. *Id.* at 318.

The legislature intended the SRA to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's *criminal history*." RCW 9.94A.010(1) (emphasis added). In turn, it defines "[c]riminal history" as the "list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or *elsewhere*." RCW 9.94A.030(11) (emphasis added). The supreme court has stated that "elsewhere" as used in the definition of criminal history is "all-encompassing and it contains no restrictions." *Morley*, 134 Wn.2d at 600. Accordingly, it explained that one's criminal history includes "all foreign convictions, whether from other state courts, federal courts, military courts, and perhaps[12] even courts in foreign countries." *Id.*

Accordingly, we must interpret the term "out-of-state convictions" in harmony with the SRA's purpose of promoting proportionality of punishment with *all of* the offender's prior convictions, including convictions from "elsewhere." RCW 9.94A.030(11). Considering this purpose, we cannot accept Lewis' argument that "out-of-state convictions" plainly means only convictions from other states within the United States. Although "[t]he determination of a defendant's criminal history is distinct from the determination of an offender score," RCW 9.94A.030(11)(c), the definition of criminal history is inextricably tied to the purpose of the SRA,

---

[12] Lewis correctly points out that the *Morely* court did not hold that foreign country convictions were to be included in one's criminal history—it held only that military courts-martial were to be included. *Morley*, 134 Wn.2d at 601. The question of foreign country convictions was not before the court in that case.

and thus, to the meaning of the offender score provision. The fact that these two determinations are *distinct* is not dispositive. To exclude foreign country convictions from the offender score provision would be contrary to the SRA's purpose of ensuring that defendants are punished proportionally to their criminal histories.

Lewis asserts that his interpretation is consistent with the SRA's purpose because the constitutional safeguards that are present in the United States and its constituent states may not be present in foreign country convictions.[13] Although the international variation in constitutional protections presents a valid policy concern, Lewis has not made clear why *excluding all foreign country convictions* from the offender score calculation is more aligned with the legislature's stated purpose than including them. He transposes his own policy argument onto the SRA rather than showing how his interpretation is consistent with the text explaining the statute's purpose.

We reject Lewis' argument. Under our reading, a defendant who was convicted of possessing child sexual abuse material in Australia is treated the same as one who was convicted of possessing child sexual abuse material in Oregon. Under Lewis' reading, the two would be treated differently. We believe our reading is more aligned with the SRA's stated purpose.

---

[13] Lewis also urges that we look to other statutes, such as the "Uniform Act for Out-of-State Supervision," RCW 9.95.270, that define the term "out-of-state" to include only other states within the United States. It is true that we may "derive the construction of a statutory phrase from an interpretation given to that phrase in other statutes, provided those other statutes are in pari materia." *Puget Sound Med. Supply v. Dep't of Soc. & Health Servs.*, 156 Wn. App. 364, 370-71, 234 P.3d 246 (2010). But the statutes Lewis cites are unrelated and address different subjects. Thus, even if the provision at issue here required construction, those statutes would not be helpful to discern its meaning. Lewis also asserts that the *inclusion* of language in those statutes limiting the term "out-of-state" to only mean other states within the United States suggests that the legislature knew how to narrow the definition of "out-of-state," and thus similarly intended to do so here. That is not the correct inference to draw from this legislative choice. It is *because* the legislature plainly knew how to limit the scope of this language that we can conclude that here, they did not intend to do so based on their omission of similarly restrictive language.

When read in context, RCW 9.94A.525(3) by its plain language does not exclude foreign country convictions. The statute is unambiguous. And because the statute is unambiguous, we need not reach Lewis' alternative argument, that the rule of lenity requires us to interpret the provision in his favor. We presume the legislature will familiarize itself with our interpretations of its enactments. *State v. Ervin*, 169 Wn.2d 815, 825, 239 P.3d 354 (2010). Should the legislature disagree with our interpretation of the term "out-of-state," we await its clarification of its intent.

## II. FACIAL VALIDITY OF AUSTRALIAN CONVICTIONS

Lewis argues for the first time on appeal that even if foreign convictions may be considered when calculating offender scores, his Australian convictions were facially invalid due to a warrantless search and seizure of his cell phone and should therefore not be included in his score. The State responds that Lewis waived[14] any claim of error by failing to raise the issue before the trial court, and that even if the claim of error was not waived, Lewis' challenge to the validity of his Australian convictions would require going beyond the face of the convictions. We hold that Lewis' Australian convictions were properly considered because they are not facially invalid.

---

[14] The State also argues that Lewis waived any claim of error by pleading guilty in Australia. But this argument conflates the issue of waiver of the right to directly appeal one's conviction with waiver of a challenge to one's ultimate sentence on the ground that the offender score included a prior conviction that was facially invalid. The State's position is also inconsistent with the seminal case of *Ammons*, where the supreme court entertained challenges to the facial validity of prior convictions by examining the guilty pleas of two defendants and determined that the convictions were not facially invalid for sentencing purposes. *State v. Ammons*, 105 Wn.2d 175, 186-89, 713 P.2d 719, 718 P.2d 796 (1986). *But see State v. Aronson*, 82 Wn. App. 762, 766, 919 P.2d 133 (1996) (concluding that prior military conviction was not invalid on its face in part because defendant's guilty plea rendered certain constitutional protections "inapplicable").

A. LEGAL PRINCIPLES

We review de novo a trial court's calculation of an offender score. *State v. Schwartz*, 194 Wn.2d 432, 438, 450 P.3d 141 (2019). Although Lewis did not challenge the facial validity of his Australian convictions below, illegal or erroneous sentences may be challenged for the first time on appeal, including challenges to an offender score calculation. *State v. Ross*, 152 Wn.2d 220, 229, 95 P.3d 1225 (2004). *See also State v. Ford*, 137 Wn.2d 472, 477-78, 973 P.2d 452 (1999) (collecting cases).

Criminal history must be proved by a preponderance of the evidence to be considered at sentencing. RCW 9.94A.500. Generally, the State does not need to prove the constitutional validity of a defendant's prior conviction for use in a sentencing proceeding. *State v. Ammons*, 105 Wn.2d 175, 187, 713 P.2d 719, 718 P.2d 796 (1986).

However, if a conviction is constitutionally invalid on its face, it may not be considered. *Id.* at 187-88. A conviction is constitutionally invalid on its face if, "without further elaboration," the conviction affirmatively shows a defect of constitutional magnitude. *Id.* at 188. Trial courts should not "go behind the verdict and sentence and judgment" to determine whether a conviction should be considered. *Id.* at 189.

Rather than merely showing the possibility of a violation, the face of the conviction must *affirmatively show* that the constitutional violation occurred. *Id.* For example, in *Ammons*, one appellant argued that his prior conviction was facially invalid because his guilty plea form did not show that he was advised of his right to remain silent, did not list the elements of his crime, and did not contain the consequences of pleading guilty. *Id.* The supreme court rejected this argument,

15

reasoning that although the defendant raised valid concerns, no infirmities were evident on the face of his guilty plea. *Id.*

B. APPLICATION

Lewis contends that South Australian police searched and seized his phone without a warrant and argues that this renders his Australian convictions facially invalid. However, his conviction does not affirmatively show that the police lacked a warrant; it merely fails to mention that a warrant was obtained. The sentencing remarks read in pertinent part:

> Jane [pseudonym] immediately reported the matter to the Victor Harbor police. That afternoon police located you and seized a mobile phone that you were holding. You were arrested and taken to the Victor Harbor Police Station where you were interviewed.

CP at 194. Where Lewis claims that "a plain reading of this narrative shows that police did not obtain any kind of warrant," he is incorrect. Br. of Appellant at 25. It is a logical fallacy to assume that the failure to mention a warrant evidences that one was not obtained.

Moreover, even if it were evident from the sentencing remarks that no warrant was obtained, the remarks would not show a facial constitutional infirmity because they do not foreclose the possibility that an exception to the warrant requirement would have allowed such a search and seizure under our constitution. Washington case law requires an *affirmative* showing of a constitutional infirmity to be evident on the face of the conviction. *Ammons*, 105 Wn.2d at 189. In this case, that would require showing not only that the Australian police did not obtain a warrant, but also that no exception applied that would have rendered a warrantless search constitutional. *See State v. Bowman*, 198 Wn.2d 609, 618-19, 498 P.3d 478 (2021) (explaining that a warrant is not the only form of legal justification for intruding into a citizen's private affairs). The face of the conviction here does not provide this information; it fails to mention, for example,

No. 57076-9-II

whether Lewis consented to the search and seizure of his phone. *See id.* at 620-21 (holding that no illegal search of cell phone occurred where owner of cell phone consented to the search). Therefore, Lewis' Australian conviction is not facially invalid.

We affirm the Lewis' judgment and sentence.

CRUSER, A.C.J.

We concur:

MAXA, J.

LANESE, J.P.T.[15]

---

[15] Judge Lanese is serving as a judge pro tempore of the court pursuant to RCW 2.06.150.