**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 28, 2023

_González C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 28, 2023

_Erin L. Lennon_
ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 101442-2 |
| Petitioner, | EN BANC |
| v. | |
| VANESSA VALDIGLESIAS LAVALLE, | Filed: September 28, 2023 |
| Respondent. | |

GORDON McCLOUD, J.—RCW 9A.28.030(1) provides, in relevant part, that a person is guilty of criminal solicitation when, "with intent to promote or facilitate the commission of a crime, he or she offers to give or gives money or other thing of value to another to engage in specific conduct which would constitute such crime."

A jury convicted Vanessa Valdiglesias LaValle of two counts of criminal solicitation after she told her minor son, S.G., that he could be with her "forever" if he poisoned his father. The Court of Appeals reversed the conviction on the ground that Valdiglesias LaValle's offer to live with S.G. "forever" if S.G. killed his father did not constitute a "thing of value" within the meaning of RCW 9A.28.030(1).

*State v. Valdiglesias LaValle*, No. 101442-2

We reverse the Court of Appeals. The plain meaning of "money or other thing of value" in RCW 9A.28.030(1) unambiguously includes both money and things that are not money but that, like money, possess utility, desirability, significance, and/or economic value. Nothing in the plain language or context of the statute indicates that "other thing of value" must be limited to things with a traditional economic or market value.

FACTS AND PROCEDURAL HISTORY

I.     Valdiglesias LaValle told her son that if he poisoned his father, then they—mother and son—could be together forever; the State charged her with criminal solicitation for this offer

Valdiglesias LaValle moved from Peru to Skagit County in 2008 to marry Timothy Grady, whom she met online. Verbatim Rep. of Proc. (VRP) (Apr. 6, 2021) at 298; VRP (Apr. 7, 2021) at 354. The couple has two children, S.G. and J.G. VRP (Apr. 6, 2021) at 298. The relationship was volatile and marked by domestic violence.[1] Valdiglesias LaValle and Grady separated in 2014. *Id.*

After the separation, Valdiglesias LaValle maintained custody of the children. *Id.* at 300. By 2019, however, Grady had gained full custody of the children. *Id.* at 299-300, 309; Exs. 38-42, 44-47. Valdiglesias LaValle paid child

---

[1] Clerk's Papers (CP) at 275-76, 284, 289, 292-98, 299-301, 303, 304-13, 314-15.

2

*State v. Valdiglesias LaValle*, No. 101442-2

support to Grady and had four-hour unsupervised weekly visits with the children. VRP (Apr. 6, 2021) at 299; VRP (Apr. 7, 2021) at 344; Exs. 46-47.

In June 2020, while at Valdiglesias LaValle's house for visitation, 10-year-old S.G. heard her and J.G. talking in another room. VRP (Apr. 6, 2021) at 284. He decided to enter the room and secretly record the conversation because he heard Valdiglesias LaValle talking about "bad stuff" and "rat poison." *Id*. at 284-85. In the recording, Valdiglesias LaValle told the children that she loved them and that they could decide when they were older whether they wanted to live with her. S.G. asked what Valdiglesias LaValle would do if she "gave food to dad." *State v. Valdiglesias LaValle*, 23 Wn. App. 2d 934, 937-40, 518 P.3d 658 (2022). Valdiglesias LaValle responded that she would not put anything in Grady's food, but that she would teach S.G. what to do. She told S.G. he could put rat poison in Grady's wine, wait for Grady to drink it and collapse, "wait a long, long time," then call the police. *Id.* at 939. Valdiglesias LaValle said that if S.G. did this, "we are forever (inaudible) live together (inaudible)." *Id.*

S.G. sent the recording to his friend, and his friend's mother contacted Child Protection Services and the police. VRP (Apr. 6, 2021) at 288, 313; VRP (Apr. 7, 2021) at 363-64, 372.

3

*State v. Valdiglesias LaValle*, No. 101442-2

The State charged Valdiglesias LaValle by second amended information with solicitation to commit first degree murder and solicitation to commit first degree assault. Clerk's Papers (CP) at 84.[2]

II. The trial court denies Valdiglesias LaValle's motion to dismiss and motion to suppress the audio recording, and a jury convicts her as charged

Prior to trial, Valdiglesias LaValle moved to dismiss the solicitation charges on the ground of insufficient evidence. CP at 26 (*Knapstad* Mot. to Dismiss); *see State v. Knapstad*, 107 Wn.2d 346, 349, 729 P.2d 48 (1986) (trial court may dismiss prosecution prior to trial for insufficient evidence if the factual allegations and evidence offered by the State, taken in the light most favorable to the State, do not allow a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt). She argued that even taking as true the facts in the arrest warrant declaration and the conversation recorded by S.G., "[t]he State is not presenting any evidence that would allow a reasonable trier of fact to find a 'solicitation' to do anything, [l]et alone to commit the crime of murder first degree." *Id.* at 29. Specifically, she argued that the State's evidence did not show

---

[2] RCW 9A.28.030(1) provides, in full, "A person is guilty of criminal solicitation when, with intent to promote or facilitate the commission of a crime, he or she offers to give or gives money or other thing of value to another to engage in specific conduct which would constitute such crime or which would establish complicity of such other person in its commission or attempted commission had such crime been attempted or committed."

*State v. Valdiglesias LaValle*, No. 101442-2

any request to commit any crime nor did it show any offer of "money or other thing of value" in exchange for doing so. *Id.* at 26-29; 78 (Def. Reply to State's Mem. in Opp. to *Knapstad* Mot.).[3]

The State opposed the *Knapstad* motion. *Id.* at 57. It argued that the audio recording showed that Valdiglesias LaValle had offered S.G. "the opportunity for him to be with his mother 'forever and ever'" in exchange for poisoning his father. *Id*. at 69-70. The trial court denied the *Knapstad* motion following a hearing. VRP (Aug. 24, 2020) at 56-63; CP at 80 (Findings of Fact (FF) & Conclusions of L. (CL) on Def. *Knapstad* Mot. to Dismiss). The court concluded that the recorded conversation between S.G. and Valdiglesias LaValle "contains an offer by the Defendant directed to her minor child in exchange for a thing of value." CP at 80 (FF 1). It denied the *Knapstad* motion because it determined that "[w]hen viewed in the light most favorable to the State, there are sufficient facts upon which a reasonable jury could enter a determination of guilt." *Id.* (CL 1).[4]

The parties proceeded to jury trial. At trial, the recording was admitted into evidence. VRP (Apr. 6, 2021) at 294 (referring to Ex. 37).

---

[3] The evidence referenced in the *Knapstad* motion was the arrest warrant declaration and a transcript of S.G.'s audio recording.

[4] Valdiglesias LaValle also moved to suppress the recording as illegally obtained without two-party consent. CP at 38. The court also denied that motion. *Id.* at 82.

S.G. testified that he did not like going to visit his mom because it was "just horrible" and "sad." *Id.* at 281. When he was there, his mom didn't let him go outside, and she talked to him mostly about his dad and about court. *Id.* S.G.'s friend had given him the idea to record his mom. *Id.* at 286. S.G. felt "so offended" when his mom talked about praying for his dad to die. *Id.* at 287. He took his mom's request to poison his dad seriously. *Id.* at 288. But he testified that he never heard his mom offer to give him something if he poisoned his dad. *Id.* at 293-94.

J.G. testified that he heard Valdiglesias LaValle tell S.G. "[t]o put rat poison in my dad's drink or food." VRP (Apr. 7, 2021) at 388-89. He said he was worried about his dad dying. *Id.* at 389. Neither party asked J.G. if he heard his mom offer to give S.G. anything in return for poisoning Grady. The jury convicted Valdiglesias LaValle of solicitation to commit first degree murder and solicitation to commit first degree assault. CP at 192-93.

Valdiglesias LaValle argued for a mitigated sentence based on her lack of criminal history and her status as a domestic violence survivor. *Id.* at 229-34, 243.

The court denied that request and sentenced Valdiglesias LaValle to 180 months of confinement on count one, solicitation to commit first degree murder. *Id.* at 331-34. The court vacated the conviction of solicitation to commit assault to prevent double jeopardy. *Id.* at 334.

*State v. Valdiglesias LaValle*, No. 101442-2

III.   The Court of Appeals reverses the criminal solicitation conviction

Valdiglesias LaValle appealed. *Id.* at 347. She raised the issue that "[a] mother's promise to her son that they will be 'together forever' does not s[]atisfy the state's obligation to prove that Ms. Valdiglesias-LaValle offered 'a thing of value' as required by RCW 9A.28.030(1)." Br. of Appellant at i (Wash. Ct. App. No. 82869-0-I (2021)). Valdiglesias LaValle raised two other issues: she argued that the trial court erred in admitting the audio recording and that the trial court abused its discretion when it concluded it could not impose an exceptional sentence below the standard range. *Id.* Valdiglesias LaValle did not appeal the denial of her *Knapstad* motion, and she did not appeal on the ground that there was insufficient evidence of proof of an "offer." *See id.*

In a published opinion, the Court of Appeals held that a "thing of value" under RCW 9A.28.030(1) "contemplates things, tangible or intangible, that have monetary value." *Valdiglesias LaValle*, 23 Wn. App. 2d at 949. The court reversed and remanded for the trial court to dismiss the charges with prejudice because it concluded that "the evidence does not establish that Valdiglesias LaValle offered to give or gave S.G. a thing of value in exchange for poisoning Grady." *Id*. at 949-50.  The court also held that the trial court did not err in denying the motion to suppress the audio recording. *Id.* at 943.  The court did not reach the exceptional sentence issue.

7

*State v. Valdiglesias LaValle*, No. 101442-2

The State sought review of two issues in this court: first, whether the Court of Appeals erred in interpreting "thing of value" in the solicitation statute to require the value to be monetary and, second, whether the Court of Appeals erred in determining "that a mother's care for her child cannot be reduced to a thing of monetary value." Pet. for Rev. at i. We granted review without limitation.[5] Ord., *State v. Valdiglesias LaValle*, No. 101442-2 (Wash. Feb. 10, 2023).

ANALYSIS

This case presents a statutory interpretation issue of first impression in this court: is the meaning of "other thing of value" as used in RCW 9A.28.030(1) limited to "thing[s]" reducible to monetary value? Based on established principles of statutory interpretation, the answer to that question is no. The plain meaning of "money *or* other thing of value" includes things that do not have economic value in the traditional sense but that nevertheless possess some other kind of worth, utility, or importance. The legislature did not limit "other thing of value" to other things with "economic value"; in other words, the statute does not require the State to

_____

[5] Valdiglesias LaValle's briefing in the Court of Appeals did not re-raise the argument, previously made in her *Knapstad* motion, that she never made an "offer." Br. of Appellant at i (Wash. Ct. App. No. 82869-0-I (2021). Rather, her briefing shows that she conceded that an offer was made, but she argued that the thing offered was not a "thing of value." *Id.* The State, of course, did not raise the argument that no offer was made in its petition for review. And Valdiglesias LaValle did not cross petition. Therefore, the issue Valdiglesias LaValle argued in her *Knapstad* motion—whether sufficient evidence showed that an offer was made—is not before us.

8

*State v. Valdiglesias LaValle*, No. 101442-2

prove marketability of the thing offered. We therefore reverse the Court of

Appeals' decision to the contrary.

    I.       The plain meaning of "other thing of value" unambiguously includes intangible things with nonmonetary value

This case presents an issue of statutory interpretation, which is a question of

law, subject to de novo review. *City of Spokane v. Spokane County*, 158 Wn.2d

661, 672, 146 P.3d 893 (2006).

The "fundamental objective" of statutory interpretation is to "ascertain and

carry out the Legislature's intent." *Dept. of Ecology v. Campbell & Gwinn, LLC*,

146 Wn.2d 1, 9, 43 P.3d 4 (2002). If a statute's meaning is plain on its face, courts

will give effect to that meaning as an expression of legislative intent. *Id*. at 9-10.

To determine the "plain meaning" of a statute, we look to the text, the context of

the statute, related statutory provisions, and the statutory scheme as a whole. *State

v. Haggard*, 195 Wn.2d 544, 548, 461 P.3d 1159 (2020) (citing *Campbell &

Gwinn*, 146 Wn.2d at 9-12). We give an undefined term "'its plain and ordinary

meaning unless a contrary legislative intent is indicated.'" *Id.* (quoting *Ravenscroft

v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998)). We

"employ traditional rules of grammar in discerning the plain language of the

statute." *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010) (citing *In re

*State v. Valdiglesias LaValle*, No. 101442-2

*Forfeiture of One 1970 Chevrolet Chevelle*, 166 Wn.2d 834, 839, 215 P.3d 166 (2009)).

If the statute is susceptible to more than one reasonable interpretation after this inquiry, it is ambiguous and we "'may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.'" *Haggard*, 195 Wn.2d at 548 (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007) (citing *Cockle v. Dep't of Lab. & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001))). "A statute is ambiguous only if it can be reasonably interpreted in more than one way, not merely because other possible interpretations exist." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 354, 144 P.3d 276 (2006) (citing *Am. Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004) (plurality opinion)).

The parties agree that the phrase "other thing of value" is unambiguous, but they disagree on what that unambiguous meaning is. We agree that that phrase is unambiguous—it cannot "be *reasonably* interpreted in more than one way," despite the fact that "other *possible* interpretations exist." *Id.* (emphasis added). The reasonable interpretation of "thing of value" is not limited to things with monetary value.

The phrase "other thing of value" is not defined in the statute, so we "give the term its plain and ordinary meaning ascertained from a standard dictionary."

10

*State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002) (citing *State v. Sullivan*, 143 Wn.2d 162, 175, 19 P.3d 1012 (2001)). The dictionary definition of "value" encompasses both "the monetary worth of something : MARKET PRICE" and also "relative worth, utility, or importance." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/value?src=search-dict-box (last visited Sept. 21, 2023). These definitions indicate that value can have both a broad meaning and a narrow meaning, depending on context. On the narrow view, "money or other thing of value" means money or something that has exchange or market value. On the broad view, "money or other thing of value" includes money or something else that has "relative worth, utility, or importance," even if that "value" is not reducible to a monetary amount. *Id.*

To decide which view the legislature took in the statute at issue here, we must read the term "other thing of value" in the context of the whole statute, "not in isolation or subject to all possible meanings found in a dictionary." *State v. Lilyblad*, 163 Wn.2d 1, 9, 177 P.3d 686 (2008). Nothing in the plain language of the statute requires the State to prove the marketability of the thing offered. Rather, looking at the phrase in the context of the whole statute, there is no reason to conclude that the legislature meant to cover only the narrow meaning of the word "value." "Thing of value" is preceded by the descriptor "other." "Other" means "one or ones distinct from that or those first mentioned or implied" and "not the

11

*State v. Valdiglesias LaValle*, No. 101442-2

same : DIFFERENT." MERRIAM-WEBSTER ONLINE DICTIONARY,

https://www.merriam-webster.com/dictionary/other (last visited Sept. 21, 2023).

Thus, in the context of the phrase "money or other thing of value," an "other" thing

of "value" is most naturally understood as something that is different from money

but that possesses either "market value" or other "worth, utility, or importance."

That natural reading makes sense when considering the nature of the crime

of solicitation. We have explained that "[t]he evil the solicitation statute

criminalizes is the enticement to commit a criminal act." *State v. Jensen*, 164

Wn.2d 943, 950, 195 P.3d 512 (2008) (citing *State v. Varnell*, 162 Wn.2d 165, 169,

170 P.3d 24 (2007)).[6] As the State notes, "one can think of any number of things

without monetary value that may be extremely valuable to a number of people:

marriage, companionship, love, acceptance or entr[y] into a particular social group,

the prevention of physical or mental harm to oneself or another, opportunity, a

promise to refrain from revealing or publicizing a secret." Suppl. Br. of Pet'r at 7;

*see United States v. Douglas*, 634 F.3d 852, 858 (6th Cir. 2011) ("Truly, of all the

things in this world widely regarded as valuable, money and the like comprise only

---

[6] In some cases, we have said that the court should not look at other decisions interpreting a statute as part of a plain language analysis unless the statute's text, in context, is ambiguous. *E.g.*, *Campbell & Gwinn*, 146 Wn.2d at 12. However, we cite *Jensen* here for its statement about RCW 9A.28.030(1)'s overall purpose—*Jensen* did not interpret the specific statutory language at issue in this case, "other thing of value."

12

a small percentage."). Any of those intangible, nonmonetary things could entice

someone to commit a criminal act.

Indeed, in other, analogous contexts, courts have frequently held that things

lacking traditional market exchange value can nonetheless be "things of value."

For example, a federal statute criminalizes extortion of "'any money or other thing

of value.'" *United States v. Zouras*, 497 F.2d 1115, 1118 n.1 (7th Cir. 1974) (per

curiam) (quoting 18 U.S.C. § 876). The defendant, while facing sex trafficking

charges, threatened one of his victims that he would distribute pornographic photos

of her to her friends and family if she testified against him. *Id.* at 1118. The

Seventh Circuit Court of Appeals held that the defendant was attempting to extort

the victim's silence and that her silence was a "thing of value." *Id.* at 1121. The

court explained, "The mere fact that the value could not easily be translated into a

monetary figure does not affect its character" for purposes of interpreting the

statute at issue. *Id.*; *see also Douglas*, 634 F.3d at 858 (defendants' demand that an

employer hire unqualified workers for union jobs during union contract

negotiations was a demand for a "thing of value" for purposes of prosecution under

the Labor Management Relations Act, 29 U.S.C. § 186(a)(1)); *United States v.*

*Girard*, 601 F.2d 69, 71 (2d Cir. 1979) (holding that intangible information was a

"thing of value" and collecting cases interpreting "thing of value" in various

*State v. Valdiglesias LaValle*, No. 101442-2

criminal statutes to cover "amusement," "sexual intercourse," "a promise to reinstate an employee," and "an agreement not to run in a primary election").

In sum, looking at the plain meaning of "other thing of value" and its context in the solicitation statute, we hold that (1) the phrase is not ambiguous and (2) the phrase can—depending on the facts of the case—include "thing[s]" that have little or no monetary exchange value.

II.      The Court of Appeals' narrow interpretation of "other thing of value" is unreasonable in the context of the statute

Contrary to the Court of Appeals' decision, there is no textual reason to adopt the narrow view of the term "other thing of value."[7] "[W]e presume the

---

[7] The Court of Appeals' analysis relies in part on its application of two tools of statutory interpretation: ejusdem generis and noscitur a sociis. *Valdiglesias LaValle*, 23 Wn. App. 2d at 945-46. Ejusdem generis assists the court in determining meaning of a "general or collective" statutory term where that term appears following a "list of specific items separated by commas." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225, 128 S. Ct. 831, 169 L. Ed. 2d 680 (2008). Ejusdem generis does not apply to a "phrase [that] is disjunctive, with one specific and one general category." *Id.* (declining to apply ejusdem generis to the phrase "any officer of customs or excise or any other law enforcement officer"); *accord State v. K.L.B.*, 180 Wn.2d 735, 741, 328 P.3d 886 (2014).  In this case, "money or other thing of value" is the exact type of disjunctive, specific-general term to which the United States Supreme Court has said that ejusdem generis does not apply. Similarly, noscitur a sociis is a tool that applies "'when a *string* of statutory terms raises the implication that the words *grouped in a list* should be given related meaning.'" *United States v. Lauderdale County*, 914 F.3d 960, 966-67 (5th Cir. 2019) (emphasis added) (internal quotation marks omitted) (quoting *S.D. Warren Co. v. Me. Bd. of Env't Prot.*, 547 U.S. 370, 378, 126 S. Ct. 1843, 164 L. Ed. 2d 625 (2006)). But it is "inapplicable when the statute provides few other analogous terms." *Douglas*, 634 F.3d at 858 (citing *Ali*, 552 U.S. at 226). Thus, noscitur a sociis is not an applicable interpretive tool to apply to the term "money or other thing of value," either.

*State v. Valdiglesias LaValle*, No. 101442-2

legislature says what it means and means what it says." *State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004) (citing *State v. Radan*, 143 Wn.2d 323, 330, 21 P.3d 255 (2001)). If the legislature had intended to limit "other thing of value" to things of monetary value, it could have written the statute to so specify. Consider the bribery statute, RCW 9A.68.010. Subsection (1)(a) makes it a crime to "offer[], confer[], or agree[] to confer any *pecuniary* benefit" on a public servant with the intent to secure a particular result in a particular matter involving that public servant's official action. (Emphasis added.) Subsection (1)(b) makes it a crime for any public servant to "request[], accept[], or agree[] to accept any *pecuniary* benefit pursuant to an agreement or understanding that his or her . . . action as a public servant will be used to secure or attempt to secure a particular result in a particular matter." (Emphasis added.) Related crimes in the same chapter similarly require the offer or acceptance of a "pecuniary benefit" as an element. *See* RCW 9A.68.040 (trading in public office), .050 (trading in special influence), .060 (commercial bribery).

By contrast, the legislature chose to use the very broad term "other thing of value" in the solicitation statute. This indicates that it did not intend to limit the solicitation statute to offers of items with monetary value.

Read in the context of the statute, "other thing of value" is not ambiguous—it reasonably includes things that share with money the qualities of value,

15

*State v. Valdiglesias LaValle*, No. 101442-2

desirability, or utility but that are not money. Depending on the facts of the case, those "thing[s]" could include community, protection, companionship, or silence. Just like money, the prospect of gaining any of these intangibles might readily induce someone to commit a crime.

Because the statute is not ambiguous, we need not turn to further tools of statutory construction to understand it. *State v. Chapman*, 140 Wn.2d 436, 450, 998 P.2d 282 (2000) (citing *Roberts v. Johnson*, 137 Wn.2d 84, 92, 969 P.2d 446 (1999)). We hold that the plain meaning of "other thing of value" is not limited to things with monetary exchange value. In this case, a mother's promise of care "forever" is certainly a thing with subjective value and worth, and it falls squarely into the category of an "other thing of value" that could support a prosecution for criminal solicitation.[8]

---

[8] As stated above, we granted review of two issues presented by the State: whether the Court of Appeals erred in interpreting "thing of value" to require a thing with monetary value, and whether the Court of Appeals erred in holding that a mother's care is not a thing of monetary value. Because we hold that "thing of value" can include items that lack economic or market worth, we need not reach the second issue. "'Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.'" *Wash. State Farm Bureau Fed'n v. Gregoire*, 162 Wn.2d 284, 307, 174 P.3d 1142 (2007) (internal quotation marks omitted) (quoting *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 68, 1 P.3d 1167 (2000)).

16

*State v. Valdiglesias LaValle*, No. 101442-2

CONCLUSION

We hold that "money or other thing of value" as used in RCW 9A.28.030(1) unambiguously includes things that possess desirability, utility, or importance, even if they do not possess traditional monetary value. We therefore reverse the Court of Appeals and remand to that court for further proceedings consistent with this opinion.

_____
Gordon McCloud, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Madsen, J.

_____
Owens, J.

_____
Stephens, J.

_____
Yu, J.

_____
Montoya-Lewis, J.

_____
Darvas, J.P.T.

17