**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

JULY 17, 2025

*Stgne, C. J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 17, 2025

*Sarah Pendleton*

SARAH R. PENDLETON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | |
| | ) | |
| Respondent, | ) | No. 102910-1 |
| | ) | |
| v. | ) | |
| | ) | En Banc |
| MATTHEW ADAM LEWIS, | ) | |
| | ) | |
| Petitioner. | ) | |
| _____ | ) | Filed: July 17, 2025 |

GONZÁLEZ, J.—Our legislature has enacted a detailed felony sentencing system in the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW. To limit judicial discretion, the SRA establishes standard sentencing ranges based on the seriousness of the crime and the offender score of the defendant. RCW 9.94A.010; 9.94A.510-.533. With some statutory and constitutional exceptions, judges are generally constrained to impose sentences that fall within that legislatively established standard range. *See* RCW 9.94A.010, .510, .535. *See generally State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017). The offender score is based on some of the individual's current and prior convictions, including "[o]ut-of-state convictions." RCW 9.94A.525.

We must decide whether "out-of-state convictions" include convictions entered by the courts of foreign nations. We conclude that the text of the SRA is ambiguous on this question. The parties have not pointed to any helpful legislative history. Accordingly, we apply the rule of lenity, reverse the Court of Appeals, and remand for resentencing.

BACKGROUND

Matthew Lewis has pleaded guilty to multiple counts of dealing in and possessing depictions of a minor engaged in sexually explicit conduct. Clerk's Papers (CP) at 213. Lewis had six prior convictions: three from Washington State and three from South Australia. CP at 214. The three prior convictions from South Australia, if included, raised Lewis's offender score from 6 to 9+, significantly increasing the standard range sentence he faced. Verbatim Rep. of Proc. (Mar. 21, 2022) at 3-4; CP at 10, 99, 118; *see* RCW 9.94A.510.

Lewis challenged the inclusion of the South Australian convictions on several grounds. CP at 99-103. The sentencing court rejected Lewis's challenges and sentenced him to 102 months on each count, to be served concurrently, followed by 36 months of community custody. CP at 215-16. Lewis appealed, arguing that "out-of-state convictions" did not include convictions entered in foreign countries. The Court of Appeals rejected his arguments and affirmed his

sentence. We granted review, hold that the South Australian convictions were improperly included in Lewis's offender score, and remand for resentencing.

ANALYSIS

This case presents a question of statutory interpretation. Our review is de novo. *In re Pers. Restraint of LaChapelle*, 153 Wn.2d 1, 5, 100 P.3d 805 (2004) (citing *State v. Beaver*, 148 Wn.2d 338, 344, 60 P.3d 586 (2002)).

We interpret statutes in light of the legislature's purpose in enacting the law. *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013) (citing *State v. Sweany,* 174 Wn.2d 909, 914, 281 P.3d 305 (2012)). "When possible, we derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *Evans*, 177 Wn.2d at 192 (citing *State v. Ervin,* 169 Wn.2d 815, 820, 239 P.3d 354 (2010)). With rare exception, we look to standard dictionaries for the definitions of undefined statutory terms. *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002) (citing *Cockle v. Dep't of Lab. & Indus.,* 142 Wn.2d 801, 808, 16 P.3d 583 (2001)); *City of Spokane ex rel. Wastewater Mgmt. Dep't v. Dep't of Revenue*, 145 Wn.2d 445, 452, 38 P.3d 1010 (2002).

The legislature has made its purpose clear:

The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of

3

felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect for the law by providing punishment which is just;

(3) Be commensurate with the punishment imposed on others committing similar offenses;

(4) Protect the public;

(5) Offer the offender an opportunity to improve himself or herself;

(6) Make frugal use of the state's and local governments' resources; and

(7) Reduce the risk of reoffending by offenders in the community.

RCW 9.94A.010.

The SRA says, in most relevant part:

Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law. Federal convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law. Neither out-of-state or federal convictions which would have been presumptively adjudicated in juvenile court under Washington law may be included in the offender score unless they are comparable to murder in the first or second degree or a class A felony sex offense. If there is no clearly comparable offense under Washington law or the offense is one that is usually considered subject to exclusive federal jurisdiction, the offense shall be scored as a class C felony equivalent if it was a felony under the relevant federal statute.

RCW 9.94A.525(3).

"Out-of-state convictions" is not a defined term in the SRA. Typically, roughly comparable convictions from other states must be counted in an offender score. *State v. Jordan*, 180 Wn.2d 456, 465, 325 P.3d 181 (2014). If the elements

4

of the conviction from another state are comparable to a Washington felony, the inquiry ends and the conviction is counted. *Jordan*, 180 Wn.2d at 461. Even if the elements are not legally comparable, a conviction from another state may be counted if the underlying conduct constitutes a felony under Washington law. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007). In deciding whether underlying conduct constitutes a felony under Washington law, the sentencing court may rely on facts "that are admitted, stipulated to, or proved beyond a reasonable doubt." *Id.* (citing *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 258, 111 P.3d 837 (2005)).

Though we presume these convictions are valid, that presumption will be overcome and a prior conviction will not be scored if it "has been previously determined to have been unconstitutionally obtained or . . . is constitutionally invalid on its face." *State v. Ammons*, 105 Wn.2d 175, 187, 713 P.2d 719, 718 P.2d 796 (1986). Simply put, unless that prior conviction is not valid on its face or has been undermined in a collateral proceeding, the sentencing court does not inquire into the underlying fairness of the conviction or whether that conviction would have been lawful under Washington law or criminal procedure rules. *Id*; *Jordan*, 180 Wn.2d at 463-65; *see also State v. Gonzalez*, 25 Wn. App. 2d 295, 298-99, 523 P.3d 800 (2023).

We have previously held that foreign convictions may be considered as part of a defendant's criminal *history* even if they were obtained under circumstances that would be unconstitutional in the United States. *State v. Herzog*, 112 Wn.2d 419, 432, 771 P.2d 739 (1989) (*Herzog* II).[1] However, "[t]he determination of a defendant's criminal history is distinct from the determination of an offender score." RCW 9.94A.030(11)(c). Criminal history is expansive and includes "prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere, and any issued certificates of restoration of opportunity pursuant to RCW 9.97.020," regardless whether those convictions and adjudications would be scored. RCW 9.94A.030(11), .525 (setting forth in considerable detail which offenses are scored).

Dictionary definitions are divided. One defines "out-of-state" as "of, relating to, or from another state of the U.S.: *a car with an out-of-state license plate; out-of-state vacationers.*" DICTIONARY.COM, https://www.dictionary.com/browse/out-of-state [https://perma.cc/RS85-RG3P]. This supports Lewis's interpretation. In contrast, *Merriam-Webster*, relevantly, defines "out-of" as "beyond the range, limits, or sphere of," and "state," relevantly, as "a politically organized body of people usually occupying a definite territory."

---

[1] In *Herzog*, the Court of Appeals affirmed a trial court's refusal to score a 1981 West Germany rape conviction that was conducted before a panel of only two jurors. *State v. Herzog*, 48 Wn. App. 831, 834, 740 P.2d 380 (1987) (*Herzog* I). That issue was not considered on appeal to this court.

MERIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/out%20of [https://perma.cc/JZU6-FLW9]; https://www.merriam-webster.com/dictionary/state [https://perma.cc/4MAE-49ZA]. Taken together, this suggests "out-of-state" refers to a conviction entered by any state. This supports the State's interpretation.

Turning outside of the SRA, many Washington statutes use the term "out-of-state" and use it in ways that are inconsistent. For example, the Uniform Act for Out-of-State Supervision concerns supervision from "any of the United States." RCW 9.95.270; LAWS OF 1937, ch. 92, § 1. Similarly, chapter 36.110 RCW, the jail industries program, treats out-of-state and foreign suppliers as separate categories. RCW 36.110.020(5). The treatment of "out-of-state" in these statutes supports Lewis's interpretation.[2] In contrast, the legislature has included in its definition of "resident student" a student "who is on active military duty who is stationed out-of-state," in context clearly intending to encompass students stationed in other nations. *See* RCW 28B.15.012(2)(i). This supports the State's interpretation.

The legislature has also clearly indicated its desire that punishment take into account the individual's criminal history, which includes, but is not limited to, the

---

[2] In addition, we note that the United States Supreme Court has interpreted a statute that barred anyone who had been "convicted in any court" of a felony from firearm possession as not including convictions rendered in foreign countries. *Small v. United States*, 544 U.S. 385, 387, 125 S. Ct. 1752, 161 L. Ed. 2d 651 (2005).

individual's scored convictions. RCW 9.94A.010, .030(11)(c). As people move over borders, they take their history with them. But the legislature must also be aware that there are nations that do not follow what we would recognize as minimum standards of due process in their criminal procedures. We are hesitant to conclude the legislature intended to include convictions from jurisdictions that allow coerced confessions, for example. *Cf. United States v. Salameh*, 152 F.3d 88, 117 (2d Cir. 1998) (declining to require a suppression hearing to consider whether statements to Egyptian police allegedly after torture should be suppressed).[3]

Nothing in the SRA, related statutes, or Washington statutes in general clearly establishes whether the legislature meant to include only other states of the union or all non-Washington convictions, including convictions entered by the courts of United States territories, the courts of Native American tribes, and foreign countries. Dictionary definitions are inconsistent, and the parties have not pointed us to helpful legislative history. Accordingly, the term "out-of-state" is subject to conflicting reasonable interpretations, rendering it ambiguous.

---

[3] The State has no obligation to establish the constitutional validity of prior convictions before these convictions are used at sentencing. *State v. Ammons*, 105 Wn.2d at 187. Prior convictions that have "been previously determined to have been unconstitutionally obtained or which is constitutionally invalid on its face may not be considered. Constitutionally invalid on its face means a conviction which without further elaboration evidences infirmities of a constitutional magnitude." *Ammons*, 105 Wn.2d at 187-88 (citations omitted). Many constitutional infirmities are not obvious from the face of a judgment and sentence. *See generally In re Pers. Restraint of Coats*, 173 Wn.2d 123, 140-41, 267 P.3d 324 (2011).

When a criminal statute is ambiguous, the rule of lenity applies. Under the rule of lenity, ambiguous criminal laws are strictly construed in favor of the defendant. *Evans*, 177 Wn.2d at 193 (citing *State v. Hornaday*, 105 Wn.2d 120, 127, 713 P.2d 71 (1986); *In re Post Sent'g Rev. of Charles*, 135 Wn.2d 239, 250 & n. 4, 252-53, 955 P.2d 798 (1998)); *State v. Pratt*, 196 Wn.2d 849, 859-63, 479 P.3d 680 (2021) (Gordon McCloud, J., dissenting) (discussing the importance of the rule of lenity in our tradition of criminal justice). We apply this rule and hold "out-of-state" does not include convictions entered in foreign countries.

We respectfully disagree with our dissenting colleagues that comparability analysis will afford those being sentenced with an opportunity to establish foreign prior convictions were obtained consistent with minimal due process of law. *See* Dissent at 2 (citing *Ammons*, 105 Wn.2d at 187). Comparability analysis is limited to considering whether the elements of a foreign crime are roughly equivalent to the elements of a scored Washington offense. *Jordan*, 180 Wn.2d at 465. Comparability analysis is not a "minitrial" into the character of a prior conviction. *See State v. Cruz*, 139 Wn.2d 186, 189 n.4, 985 P.2d 384 (1999).

*Ammons* recognizes that "a prior conviction which has been previously determined to have been unconstitutionally obtained or which is constitutionally invalid on its face may not be considered." 105 Wn.2d at 187-88 (citing *In re Pers. Restraint of Bush*, 26 Wn. App. 486, 497-98, 616 P.2d 666 (1980), *aff'd*, 95 Wn.2d

551, 627 P.2d 953(1981)).  A conviction has been previously determined to be unconstitutional when it is successfully overturned on appeal or so recognized in a collateral challenge.  *See id*.  Washington courts have never allowed a sentencing proceeding to substitute for a proper collateral challenge or appeal of a prior conviction.  *See State v. Thompson*, 143 Wn. App. 861, 867-68, 181 P.3d 858 (2008). At sentencing, the defendant is limited to showing incomparability or constitutional facial invalidity.  *State v. Blair*, 191 Wn.2d 155, 162-63, 421 P.3d 937 (2018).  Washington courts have no authority to entertain collateral challenges to foreign convictions, and it would be the rare foreign judgment that would demonstrate on its face that it was gotten by methods that did not meet Washington due process protections.  Accordingly, we respectfully disagree with the dissent that comparability analysis is adequate to guard against unconstitutionally obtained foreign convictions being used in sentencing.

For similar reasons, we also respectfully disagree with our dissenting colleagues that this case is resolved by *State v. Morley*, 134 Wn.2d 588, 952 P.2d 167 (1998).  Dissent at 2.  *Morley* concerned whether a general court martial obtained in a United States' military tribunal and affirmed by a three-judge panel of the United States Army Court of Criminal Appeals was properly scored or considered part of an offender's criminal history under the SRA or considered a

strike under the Persistent Offender Accountability Act. 134 Wn.2d at 592-95.

*Morley* did not consider a conviction rendered by the court of a foreign nation.

*Morley* concluded that a Washington sentencing court could properly consider the record of an out-of-state conviction to determine whether the elements of the crime were comparable.  134 Wn.2d at 606.  Nothing in *Morley* suggests that the out-of-state records may be consulted to determine whether the conviction would have otherwise been properly obtained in Washington.[4] In addition, since *Morley*, the legislature has made clear that "[t]he determination of a defendant's criminal history is distinct from the determination of an offender score." LAWS OF 2002, ch. 107, § 2(13)(c) (currently codified at RCW 9.94A.030(11)(c)).

We recognize that our decision today is not without cost. Two of the expressed purposes of the SRA include ensuring "that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history," and rendering sentences that are "commensurate with the punishment imposed on others committing similar offenses." RCW 9.94A.010(1), (3). In addition, we owe an appropriate level of respect to the courts

---

[4] Nor does *Herzog* II support the proposition that a court making a comparability analysis could consider whether a foreign conviction was obtained by constitutional processes.  *Herzog* II asked whether the facts underlying a foreign conviction could be properly considered by a sentencing court in determining where, in a standard range that was *not* calculated based on that foreign conviction, the defendant should be sentenced. 112 Wn.2d at 420.  The Court of Appeals had previously determined that the foreign conviction was invalid on its face and that issue was not before us. *See Herzog* I, 48 Wn. App. at 834.  Nothing in *Herzog* I suggests the sentencing court could properly inquire into the procedures by which a conviction was obtained.

of territories, tribal courts, and other nations. We note that nothing in this opinion should be taken to prevent a sentencing court from considering such history when deciding how to exercise its discretion within the structure of the SRA.

But given the ambiguity in the SRA and the other important interests at stake, we reverse the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

González, J.

WE CONCUR:

Yu, J.

Montoya-Lewis, J.

Whitener, J.

Gordon McCloud, J.

No. 102910-1

JOHNSON, J. (concurring)—I concur with the majority that Matthew Lewis is entitled to resentencing, but the majority errs by resorting to the rule of lenity to interpret a statute that is not ambiguous. Although the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, does not define "out-of-state convictions," well-established principles of statutory interpretation yield only one reasonable interpretation of the term. By employing those tools, the statutory language defining "out-of-state convictions" refers to convictions from other U.S. states and not those from foreign countries. The rule of lenity is appropriate only *after* statutory interpretation fails to reveal the legislature's intent, and thus the majority errs by declining to engage in meaningful statutory analysis before concluding that the rule of lenity applies. Majority at 6-8 (devoting only cursory treatment to analysis of the statute's plain meaning and context).

The fundamental goal of statutory interpretation is to ascertain the intent of the legislature, and if the plain meaning of the statute is discernable, we must give effect to that meaning as an expression of the legislature's intent. *State v. Valdiglesias LaValle,* 2 Wn.3d 310, 317-18, 535 P.3d 856 (2023). We ascertain the

plain meaning of a statute through the statutory text, the context, related statutory provisions, and the statutory scheme as a whole. *State v. Haggard*, 195 Wn.2d 544, 548, 461 P.3d 1159 (2020). Here, while divided dictionary definitions suggest the statutory language, when viewed in isolation, may have more than one interpretation, the legislature's intended meaning is discernable from the context surrounding the term, related statutes in Title 9 RCW, and the role of the offender score in the statutory scheme of the SRA.

Starting with the immediate context of the term, the legislature's intent that "out-of-state" refers to other U.S. states is discernable from the sentence that immediately follows the use of the term: "Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law. *Federal convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law.*" RCW 9.94A.525(3) (emphasis added). Logically, if "out-of-state" had been intended to cover any conviction from outside of Washington, federal convictions would already be included in that provision. The addition of the sentence expressly referring to them would be completely superfluous if that had been the legislature's intent. Thus, the specific inclusion of comparable federal convictions expresses the legislature's intended meaning that "out-of-state" refers to other U.S. states, and no ambiguity exists.

Further evidence of the legislature's intended meaning can be found throughout the SRA, which is codified in chapter 9.94A RCW. The term "out-of-state" can also be found in RCW 9.94A.030(42), which specifically references federal, tribal, military, county, and municipal convictions. ("'Repetitive domestic violence offense' means . . . (b) Any federal, out-of-state, tribal court, military, county, or municipal conviction . . . ."). These terms all become superfluous under the State's interpretation of the term "out-of-state." Further, the legislature uses express language when describing criminal history from foreign jurisdictions in the SRA. For example, in RCW 9.94A.535(2)(b), the SRA provides that courts may impose exceptional sentences when the defendant's "prior unscored foreign criminal history results in a presumptive sentence that is clearly too lenient in light of the purpose of [the SRA]." This provision shows that the legislature did not intend that foreign criminal history would already be considered in the offender score as an "out-of-state" conviction, and it shows that the legislature knows how to include foreign convictions when intended.

Related statutes that use the term "out-of-state" elsewhere in Title 9 RCW also indicate that the legislature uses the term to refer to domestic sources outside of Washington State. For example, in RCW 9.95.270, "out-of-state supervision" is used to refer to supervision from "any of the United States." Similarly, in RCW 9.41.122, "out-of-state purchasing" is used to refer to purchases of firearms "in a

3

state other than Washington." Although the majority manufactures ambiguity by

noting that the legislature uses "out-of-state" with a broader implicit meaning in

Title 28B RCW, the section of our state's statutes that governs institutions of

higher education,[1] such a reading does not examine a related statute or place RCW

9.94A.525 in its appropriate context, which is the section of our state law that

concerns crimes and punishments—Title 9 RCW—not the section regarding higher

education.

Finally, within the statutory scheme under the SRA, the distinct role of the

narrower "offender score" in contrast to the broader "criminal history"

demonstrates the legislature's intended meaning. The SRA creates a system

intended to structure the sentencing court's discretion, to "[e]nsure that the

punishment for a criminal offense is proportionate to the seriousness of the offense

and the offender's criminal history." RCW 9.94A.010(1). The SRA defines

"criminal history" as "the list of a defendant's prior convictions and juvenile

adjudications, whether in this state, in federal court, *or elsewhere*." RCW

9.94A.030(11) (emphasis added). This definition is broader than the language used

in the calculation of the offender score under RCW 9.94A.525. Throughout the

SRA, this system accounts for a defendant's entire "criminal history," including

---

[1] Majority at 7 (reading RCW 28B.15.012(2)(i) to provide "resident" status to students stationed "out-of-state" on active military duty).

4

foreign convictions, at multiple points in the sentencing process. *See, e.g.*, RCW 9.94A.441 ("The prosecuting attorney and the defendant shall each provide the court with their understanding of what the defendant's criminal history is prior to a plea of guilty pursuant to a plea agreement."), .500(1) ("The court shall consider the risk assessment report and presentence reports, if any, including any victim impact statement and criminal history . . . ."). However, the offender score is often not the defendant's entire criminal history as it is defined in RCW 9.94A.030(11). If the legislature had intended to make the offender score as broad as the term "criminal history," it could have done so easily by using the same catchall term, "elsewhere," that it used in the "criminal history" definition. Since RCW 9.94A.525 does not include that term, we should not infer it.

The legislature clarified in 2002 that the offender score is not to be equated with "criminal history" when it amended RCW 9.94A.030 to add that "[t]he determination of a defendant's criminal history is distinct from the determination of an offender score." LAWS OF 2002, ch. 107, § 2(13)(c). When we examined a previous version of the SRA in *State v. Morley* to determine whether courts-martial qualified as convictions for the purpose of the offender score, we treated the offender score as though it included all convictions within the definition of "criminal history," as long as the conviction met the comparability requirements

and washout provisions of RCW 9.94A.525.[2] 134 Wn.2d 588, 601, 952 P.2d 167 (1998). However, the two provisions cannot be read coextensively today given the legislature's express statement in RCW 9.94A.030(11)(c) that they are distinct determinations. While the legislative history indicates the 2002 amendment was at least in part a response to judicial interpretation of the retroactivity of the washout provision,[3] rather than the issue at hand here and in *Morley,* the addition of subsection (11)(c) is akin to an interpretive directive, which aids courts in ascertaining the legislature's intended relationship between the criminal history definition and the offender score. Because we did not have the directive of subsection (11)(c) when we decided *Morley* in 1998, our analysis incorrectly treated the provisions as coextensive. Based on this statutory directive and the statutory scheme as a whole, the legislature has expressed that the definition of "criminal history" under RCW 9.94A.030 is not coextensive with the scope of the "offender score" under RCW 9.94A.525. While foreign and other convictions can be considered as part of the defendant's "criminal history" under RCW 9.94A.030(11), foreign country convictions are not included in the term "out-of-state" in RCW 9.94A.525(3).

---

[2] Codified at the time as RCW 9.94A.360.
[3] Bill reports indicate the amendment was motivated by *State v. Cruz*, 139 Wn.2d 186, 985 P.2d 384 (1999), and *State v. Smith*, 144 Wn.2d 665, 30 P.3d 1245 (2001).

Thus, when interpreted in this context, in context with the language used in other provisions of the SRA, and in consideration of the role of the offender score in the statutory scheme as a whole, the term "out-of-state" in RCW 9.94A.525(3) refers only to convictions from other U.S. states. Because legislative intent can be discerned from other rules of construction, the rule of lenity is inapplicable here. Although we have, in some limited circumstances, applied the rule of lenity to resolve ambiguities in the SRA,[4] "the rule only applies when a penal statute is ambiguous *and* legislative intent is insufficient to clarify the ambiguity." *In re Post Sent'g Rev. of Charles*, 135 Wn.2d 239, 250 n.4, 955 P.2d 798 (1998). The rule of lenity is a tool we reach only *after* employing the rules of statutory construction to attempt to discern the legislature's intent. *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 462, 219 P.3d 686 (2009) ("If *after* applying rules of statutory construction we conclude that a statute is ambiguous, 'the rule of lenity requires us to interpret the statute in favor of the defendant *absent legislative intent to the contrary.*'" (emphasis added) (quoting *State v. Jacobs*, 154 Wn.2d 596, 601, 115 P.3d 281 (2005) (citing *Charles*, 135 Wn.2d at 249))). The rule of lenity applies where we cannot otherwise resolve ambiguity through careful examination of the language, context, related statutes, and statutory scheme. In this case, the

---

[4] *See, e.g.*, *In re Post Sent'g Rev. of Charles,* 135 Wn.2d 239, 955 P.2d 798 (1998); *In re Pers. Restraint of Sietz,* 124 Wn.2d 645, 880 P.2d 34 (1994); *State v. Roberts,* 117 Wn.2d 576, 817 P.2d 855 (1991).

7

legislature's intent is discernable from those sources, and I would hold that the term "out-of-state" under RCW 9.94A.525(3) plainly refers to convictions from other U.S. states and not those from foreign countries.

_____
Johnson, J.

_____
Diaz, J.P.T.

No. 102910-1

STEPHENS, C.J. (dissenting)—The Sentencing Reform Act of 1981 (SRA) requires courts to include in a defendant's offender score "[o]ut-of-state convictions" that are comparable to offenses under Washington law. RCW 9.94A.525(3). The issue in this case is whether the term "out-of-state" includes foreign countries such as Australia. In *State v. Morley*, we held that out-of-state "is equally broad in its scope" to the term "elsewhere," which is used in the SRA's definition of criminal history, and "reaches all foreign convictions" from a jurisdiction other than Washington State. 134 Wn.2d 588, 599-600, 952 P.2d 167 (1998) (interpreting former RCW 9.94A.360 (1997), *recodified as* RCW 9.94A.525). In 2002, the legislature amended the SRA specifically to abrogate our interpretation of the washout provision in *State v. Cruz*, 139 Wn.2d 186, 985 P.3d 384 (1999), and *State v. Smith*, 144 Wn.2d 665, 30 P.3d 1245 (2001), and clarified that "[t]he determination of a defendant's criminal history is distinct from the determination of

1

an offender score." LAWS OF 2002, ch. 107, §§ 1, 2(13)(c). That amendment did not change the provision related to counting out-of-state convictions in offender scores, nor did the legislature "express clear intent" to abrogate our interpretation of that provision in *Morley*. *See Antio, LLC v. Dep't of Revenue*, 3 Wn.3d 882, 884, 557 P.3d 672 (2024). I conclude that our holding in *Morley* resolves the question in this case, and Lewis does not argue that our interpretation of "out-of-state" in *Morley* is incorrect and harmful.

The majority observes that the legislature likely did not intend to include in a defendant's offender score convictions from jurisdictions that do not provide a minimum level of due process. I agree, but this concern is adequately addressed in the comparability analysis. Under that analysis, courts presume that a conviction from a jurisdiction other than Washington State is valid, and a defendant overcomes that presumption by showing that the conviction has been "unconstitutionally obtained" or that it is "constitutionally invalid on its face." *State v. Ammons*, 105 Wn.2d 175, 187, 713 P.2d 719, 718 P.2d 796 (1986). While this typically may be determined from the face of the judgment and sentence (or equivalent document), nothing prohibits looking beyond these documents. We appropriately recognized in *Morley* that "it may be necessary to look into the record of a foreign conviction to determine its comparability to a Washington offense." 134 Wn.2d at 606. There, we

2

examined not only the elements of the defendants' court-martial offenses but also documents from the court-martial hearing record and the procedural protections provided in a court-martial proceeding to determine that the court-martial offenses were comparable. *Morley*, 134 Wn.2d at 611-12, 615-620 ("If a court-martial complies with federal constitutional protections, nothing prevents a sentencing court from counting the court martial as a prior conviction for the purposes of sentencing."). Nothing prevents a defendant from arguing that their conviction should not be counted in their offender score because it was obtained through a proceeding falling well below our notions of due process, even if it complied with the constitution of the jurisdiction in which it was obtained. *See State v. Herzog*, 112 Wn.2d 419, 421, 771 P.2d 739 (affirming trial court's refusal to count rape conviction from West Germany obtained through a trial before a jury of two people). Lewis has not made that argument here.

I disagree with the majority's invocation of the rule of lenity to resolve this case. Even if that rule could be applied appropriately here, the majority has not demonstrated that it necessarily leads to the result the majority anticipates. "[T]he principles of fairness, notice, and due process animating the rule of lenity require that [the defendant] receive the benefit of the more lenient reading of the statute." *State v. Pratt*, 196 Wn.2d 849, 863, 479 P.3d 680 (2021) (Gordon McCloud, J.,

3

dissenting). While the majority cites to this dissent to highlight our tradition of lenity, the result it anticipates does not necessarily follow from its holding. Simply put, the rule of lenity serves its purpose only if the defendant receives the benefit of lenity. Even if the term "out-of-state" were ambiguous and lenity principles applied, it does not follow that leaving convictions from foreign countries uncounted in an offender score but open for consideration as part of a defendant's criminal history will necessarily result in more lenient sentences for defendants like Lewis. A sentencing judge aware of an unscored foreign country conviction for a serious crime may validly exercise discretion to impose a sentence at the top of the standard range, resulting in a longer sentence than if the conviction had been included in the offender score and the judge had sentenced toward the bottom of that standard range. There is no claimed ambiguity in the sentencing court's authority to do so.

The majority cites *State v. Evans*, 177 Wn.2d 186, 298 P.3d 724 (2013), for its recitation of the rule of lenity but overlooks that the *Evans* court expressly declined to apply lenity to Washington's identity theft statute. The *Evans* court relied on *State v. Hornaday*, 105 Wn.2d 120, 127, 713 P.2d 71 (1986), where this Court applied the rule of lenity to Washington's illegal possession of liquor statute to conclude that "possession" of liquor should not be construed to include liquor

already assimilated by the body. As a result of this more lenient interpretation, the defendant was found not guilty of violating the statute. *Id.*

The invocation of lenity in *Hornaday* parallels other decisions by this court. A more lenient statutory interpretation has reduced a defendant's offender score, required offenses to be merged and not counted separately, and allowed judges to consider only a narrow set of "prior offenses" in their sentencing. *State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991); *In re Pers. Restraint of Sietz*, 124 Wn.2d 645, 648, 880 P.2d 34 (1994); *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 462, 219 P.3d 686 (2009). Key to the court's analysis in these cases is the underlying purpose of the rule of lenity: to provide more favorable outcomes for defendants. "[A]n ambiguous criminal statute cannot be interpreted to increase the penalty imposed." *Winebrenner*, 167 Wn.2d at 462 (citing *State v. Adlington-Kelly*, 95 Wn.2d 917, 920-21, 631 P.2d 954 (1981)). The majority invokes lenity here while expressly leaving the door open for a sentencing judge to consider unscored foreign country convictions and impose a sentence at the top of the standard range, resulting in a longer penalty. Such an application drifts from the purpose of the rule, and I do not believe it is appropriate, or helpful, in this context.

Because *Morley* answers the question in this case and has not been abrogated by the legislature or shown to be incorrect and harmful, I would affirm the lower court. Accordingly, I respectfully dissent.

_____
Stephens, C.J.

_____
Madsen, J.